HENNING NELSON CONSTRUCTION
COMPANY, Respondent,

v.

FIREMAN'S FUND AMERICAN LIFE
INSURANCE COMPANY,
petitioner, Appellant.

No. C5–84–1007.

Supreme Court of Minnesota.

March 21, 1986.

Hugh J. Cosgrove, Minneapolis, for appellant.

Gary J. Meyer, Robbinsdale, for respondent.

AMDAHL, Chief Justice.

Fireman's Fund American Life Insurance Company (American Life) appeals from a decision of the Court of Appeals affirming the decision of the trial court in favor of Henning Nelson Construction Company (HNCC). HNCC originally brought suit against American Life when American denied coverage of a claim submitted by HNCC under a policy issued by American. American Life responded by asserting the 1-year limitation on legal actions contained in the policy barred HNCC's suit in this case. The trial court held the 1-year limitation in the policy did not apply in this case. The Court of Appeals affirmed. *Henning Nelson Construction Co. v. Fireman's Fund American Life Ins. Co.*, 361 N.W.2d 446 (Minn.Ct.App.1985). We granted review and now affirm the decision of the Court of Appeals, but hold it applied the wrong standard.

On January 17, 1979, American Life issued a "Builder's Risk" insurance policy to HNCC, the general contractor on the construction of an addition to the Baker Community Center in St. Paul, Minnesota. The policy contained specific exclusions from coverage, as well as various other policy restrictions.

On June 21, 1979, a foundational wall of the Baker project collapsed. Respondent's vice president and expert witness, Mark Reinertson, testified that eight factors contributed to the collapse of the wall. These included: (1) a subcontractor who was backfilling around the wall and caused ground vibrations; (2) a large crane, used to lay precast spancrete planks across the top of the foundation, which caused ground vibrations and exerted downward pressure on the ground; (3) several trucks carrying spancrete planks which exerted downward pressure; (4) a concrete truck which caused ground vibration; (5) another subcontractor, working on the other side of the project, who also caused ground vibration; (6) a large pile of backfill dirt located near the wall, which exerted a downward pressure; (7) approximately 1½ inches of rain that had fallen within the previous 4–5 days; and (8) the fact that the collapsed wall was constructed of concrete block rather than poured concrete. Reinertson testified all of these combined to exert a downward force on the ground, which transferred to a lateral force underground,

pushing earth against the wall and causing it to collapse. Reinertson also testified he did not think that any one of these factors alone was enough to cause the wall to collapse, but that it was a combination of all the factors.[1]

Reinertson contacted HNCC's insurance agent, Francis Lauenstein, on the day of the collapse to report the incident for insurance purposes. Reinertson, through Lauenstein, filed a proof of loss with American Life the following day. American Life assigned a claims adjuster, Gary Rawie, to investigate the claim.

The parties disagree over the dates they discussed the outcome of the insurance claim and over what was said concerning acceptance or rejection of the claim by American Life. Reinertson testified he met with Rawie and Lauenstein on the Monday following the collapse and that Rawie instructed him to "go ahead and start cleaning up and getting the wall [rebuilt]." He also testified Rawie revisited the jobsite several days later and that nothing was mentioned regarding American denying coverage on either occasion. He claimed he had no other contact with Rawie in 1979 and that all inquiries concerning the insurance claim were directed to Lauenstein. He also testified Lauenstein mentioned that American Life would cover the loss and "to go ahead and fix the wall up and when you get the walls done and repaired, send [Rawie] the bill." Reinertson testified that the next contact he had with Rawie was in late 1980. At that time, the parties discussed the claim and Rawie instructed Reinertson to turn in the bills as soon as possible, but did not mention denying coverage. The parties allegedly had 3–6 meetings between September and December of 1980. On December 18, 1980, Reinertson sent a letter to Lauenstein detailing the costs for the first phase of reconstruction and asking for payment. Although the parties had allegedly discussed the costs at earlier meetings, Reinertson admitted his letter was the first formal submission of the bills to American Life.[2] On January 7, 1981, Reinertson received a letter from Rawie denying coverage on the claim and asserting that coverage had been denied earlier. Reinertson, however, denies ever receiving any previous indication that coverage had been denied under the policy.

Rawie, on the other hand, testified he first contacted Reinertson by phone on June 25, 1979. He then inspected the jobsite on June 26, at which time the scope of the loss was discussed. At that time, Rawie allegedly discussed with Reinertson the possibility of recovering from the Aetna Insurance Company, the insurer of the backfill excavator, A. Kamish & Sons, who was partially responsible for the accident. Rawie then testified he telephoned Reinertson on July 2, 1979, and informed him that HNCC should attempt to recover from Aetna. American Life considered the loss was due either to Kamish's heavy equipment, and therefore covered by Aetna, or to hydrostatic ground pressure, which was allegedly excluded under HNCC's Builder's Risk policy. Rawie claimed he wrote Reinertson a letter on October 9, 1979, followed by a phone call on October 16, 1979, inquiring about the possible denial of coverage by Aetna. When no answer was given, Rawie closed the Baker project file on May 8, 1980. The file was reactivated in December of 1980 when Rawie received a copy of Reinertson's December 18th letter.

Francis Lauenstein testified he had been in contact with HNCC at different times during the rebuilding of the wall. While he

---

**1.** Reconstruction of the wall took place in two phases. The first phase included removal of the debris and rebuilding of the wall. This took place from July to December of 1979. A second phase was required due to damaged telephone, electrical, and sewer systems that went undetected at the time of the collapse. The second phase was originally scheduled to start in April or May of 1980, but was delayed due to other requests by the owner. The second phase then began in August of 1980 and was completed in November of the same year.

**2.** Reinertson testified that the reason he could not submit the costs before December of 1980 was because the final bills had not been submitted to HNCC before that time.

had been informed by American Life that there was a possible problem with coverage, he never communicated this to HNCC. Lauenstein, however, had told Reinertson to get copies of the rebuilding costs to American Life so they could make their "final determination."

After receiving Rawie's January 7th letter, Reinertson contacted Lauenstein. Lauenstein agreed to work with HNCC in an attempt to reverse American Life's decision. After that attempt failed, Reinertson, through his attorneys, sent a letter to Rawie on September 2, 1981, attempting to change the company's decision. When American Life again denied coverage, HNCC filed suit on December 16, 1981, contesting American's denial of coverage.

■■■ 1. The insurance policy issued by American Life to HNCC contained a provision limiting HNCC's ability to proceed by legal action against American Life to "within 12 months * * * after discovery by the Insured of the occurrence which gives rise to the claim * * *."[3] HNCC filed its proof of loss on June 22, 1979, but did not file suit until December 16, 1981. American Life argues, therefore, that

HNCC's claim is barred under the contract. The trial court held the limitation provision was modified by Minn.Stat. § 541.05, subd. 1(1) (1984), which provides a 6-year statute of limitations for all contract actions.[4] The trial court ruled that this statute modified the time period under the contract and that therefore HNCC's claim was timely.[5] The Court of Appeals held section 541.05, subd. 1(1), applied in this case because American Life did not show that it was prejudiced by HNCC's failure to bring suit within 1 year of the wall's collapse.[6] American Life claims these decisions were erroneous and that its policy limitation is valid under Minnesota law.

■■■ When considering whether the parties to an insurance contract can modify the statutorily prescribed limitations period, this court has held that absent a specific statute to the contrary, "the parties * * may limit the time within which an action may be brought to a period less than that fixed by the general statutes of limitation provided the limitation is not unreasonably short * * *." *Prior Lake State Bank v. National Surety Corp.*, 248 Minn. 383, 388, 80 N.W.2d 612, 616 (1957); *see Gen-*

---

**3.** The policy also provided: (1) if it were invalid "by the laws of the State within which [it was] issued, suit must be commenced within the shortest period provided by state law;" and (2) any term of the policy "which [was] in conflict with the statutes of the State wherein this policy is issued [was thereby] amended to conform to such statutes."

**4.** Minn.Stat. § 541.05, subd. 1(1) (1984), provides:

> Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:
> (1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;

**5.** The trial court held the last phrase of Minn. Stat. § 541.05, subd. 1(1), which states the 6-year statute of limitations does not apply where any other limitation is "expressly prescribed," concerns limitations expressly prescribed by *other statutes* and not contractual limitations. This ruling was incorrect. The plain meaning of section 541.05, subd. 1(1), implies that the "other limitations" language refers to contractual limitations and not other statutes. Also, the trial court's ruling is in conflict with the rule

stated by this court that, absent a specific statute to the contrary, parties to an insurance policy can reasonably modify the limitations period. *See Prior Lake State Bank v. National Surety Corp.*, 248 Minn. 383, 80 N.W.2d 612 (1957).

**6.** The Court of Appeals relied on *Loram Maintenance of Way, Inc. v. Consolidated Rail Corp.*, 354 N.W.2d 111 (Minn.Ct.App.1984), for its decision that American Life must show prejudice before the 1-year limitation will be applied. This decision was incorrect. In *Loram*, the court was considering the effect of the injured party's failure to file a *notice* of loss with the insurance company within the limitation period prescribed by the contract. This court has held where proper notice has not been given within such period, the insurance company must show that it was prejudiced by the failure to file a notice. *See Reliance Ins. Co. v. St. Paul Ins. Cos.*, 307 Minn. 338, 239 N.W.2d 922 (1976). The present case, however, deals with the effect of the limitation period *after* notice has already been filed. Failure to notify American Life of the loss is not at issue in this case. The *Reliance* rule therefore does not apply. *See Simms v. Allstate Ins. Co.*, 27 Wash.App. 872, 621 P.2d 155 (1980).

*dreau v. State Farm Ins. Co.*, 206 Minn. 237, 288 N.W. 225 (1939); *Stewart v. National Council of Knights and Ladies of Security*, 125 Minn. 512, 147 N.W. 651 (1914). Such provisions, however, are not generally favored and are strictly construed against the party invoking them. *Prior Lake State Bank*, 248 Minn. at 388, 80 N.W.2d at 616.

■ Based on this standard, the rulings by both the trial court and Court of Appeals were erroneous. The proper analysis for a court in examining whether the parties to a contract can validly shorten the statutorily prescribed limitation period is twofold. The court must first look to see if a specific statute prohibits the use of a different limitation period in the particular case. *See Gendreau*, 206 Minn. at 239, 288 N.W. at 226. If no such statute exists, the parties are then free to shorten the limitations period as long as the contractual period is not unreasonable in length. *Id.* Whether a contractual limitation is reasonable or not is to be decided on a case-by-case basis, looking at the particular facts of each case.

■ No statute of limitations was found that specifically applies in this case. The issue, therefore, is whether the 1-year limitation within the American Life insurance policy is reasonable.[7] The trial court

held that "the one-year limitation contained in the policy [was] unreasonably short." While the trial court was not specifically required to rule on this issue due to the fact it held Minn.Stat. § 541.05, subd. 1(1), applied, its decision as to the reasonableness of the 1-year limitation is not clearly erroneous and must be upheld. Minn.R. Civ.P. 52.01; *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980) (reviewing court will reverse a trial court's findings only if, on review of the entire record, it is left with a firm and definite conviction that a mistake has been made); *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971). We hold, therefore, that the 1-year limitation on actions found in the Builder's Risk policy was unreasonably short. Under the provisions of the policy requiring it to conform to state law, the policy is hereby amended to include the 6-year statute of limitations found in section 541.05, subd. 1(1).[8] Because HNCC filed its claim within 6 years of the collapse of the wall, it is not barred from bringing suit against American Life to enforce the policy.[9]

2. American Life also argues HNCC's loss is excluded under several provisions of the policy. Specifically, American claims the exclusions involving underground water, earth movement, and design defects

---

**7.** This court has held 1-year contractual limitations valid under different circumstances, *see e.g., Gendreau*, 206 Minn. 237, 288 N.W. 225; *Hayfield Farmers Elevator & Mercantile Co. v. New Amsterdam Casualty Co.*, 203 Minn. 522, 282 N.W. 265 (1938), but has not considered the same limitation in a casualty loss setting.

**8.** As an alternative argument, American Life asserts that if the 1-year policy limitation is found unreasonable, its Builder's Risk policy falls within the 2-year statute of limitations for fire insurance policies under the Minnesota Standard Fire Insurance Policy, Minn.Stat. § 65A.01, subd. 3 (1984). This argument is incorrect. While an all-risk policy such as this one falls within the purview of the Standard Policy, *see* Minn.Stat. § 65A.01, subd. 1 (1984); *Fireman's Fund Ins. Co. v. Vermes Credit Jewelry, Inc.*, 185 F.2d 142, 144–45 (8th Cir.1950), the Standard Policy applies only to losses due to fire and not to casualty losses. Subdivision 1 of section 65A.01 states:

Any policy or contract otherwise subject to the provisions of this subdivision * * * which includes * * * coverage against the peril of fire and coverage against other perils may be issued without incorporating the exact language of the Minnesota Standard Fire Insurance Policy, provided: Such policy or contract shall, *with respect to the peril of fire,* afford the insured all the rights and benefits of the [Standard Policy] * * *.

Minn.Stat. § 65A.01, subd. 1 (emphasis added). This language indicates the Standard Policy provisions were meant to apply only to fire losses, even though the policy in question may afford broader coverage. We hold, therefore, that the provisions of the Standard Fire Insurance Policy apply only to fire losses, and not nonfire losses, under an all-risk insurance policy.

**9.** HNCC raised claims of estoppel and tolling on appeal. However, because we have held that section 541.05, subd. 1(1), applies, we need not consider these issues.

apply in this case. The trial court held those exclusions did not apply based on the testimony of Reinertson concerning the cause of the wall's collapse. The Court of Appeals affirmed that holding.

■■■■ An insurer has the burden of proving that a policy exclusion applies. *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976). In interpreting a policy exclusion, any ambiguity in the language of the policy must be construed in favor of the insured. *Id.; Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The court, however, has no right to read an ambiguity into the plain language of an insurance contract in order to construe it against the insurer. The policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning. *Bobich*, 258 Minn. at 294, 104 N.W.2d at 24.

■■■ A. *Underground Water Exclusion.* Under the Builder's Risk policy, a loss is excluded from coverage if it is caused by, resulting from, contributed to, or aggravated by:

> Water below the surface of the ground, including that which exerts pressure on * * * foundation walls * * *.

HNCC claims this exclusion should be characterized as a "flood or tidal wave" exclusion which applies only when the loss is due to excessive water caused by flooding. The Court of Appeals refused to adopt this interpretation. It was correct in doing so.

The plain meaning of this exclusion demonstrates that it does not apply only to water caused by floods or tidal waves. The exclusion applies to any "water below the surface of the ground" which exerts pressure on the foundation. Nowhere in this particular exclusion does it mention floods or tidal waves. In addition, the policy provided a separate exclusion covering flood water or tidal waves. It would be redundant to construe both of these exclusions as applying to the same type of loss, particularly when the insurer separated them into two specific exclusions. Considering the exclusions as a whole, the plain meaning of the underground water exclusion is that it covers all water below the earth's surface which exerts pressure, not simply that related to floods or tidal waves.

■■■ American Life, however, still has the burden of proving that this exclusion has been met. The only testimony concerning underground water as a possible cause of the accident was given by Reinertson. He testified the ground was only moist the day of the collapse, there was no standing water around the jobsite, and there had been 1½ inches of rain in the past 5 days. More importantly, Reinertson testified the water under the surface did not itself exert pressure against the wall, but only helped to "transmit horizontal and vertical pressures on [the wall] more readily than if [the ground] was completely dry." Finally, American Life submitted no testimony of its own concerning whether the water itself had actually exerted pressure against the wall; Rawie admitted he had run no tests to determine whether the water had caused the collapse. We agree with the trial court's determination, affirmed by the Court of Appeals, that American has failed to prove its claim.

■■■ B. *Earth Movement Exclusion.* Under the policy, a loss is excluded if it is caused by:

> Earthquake, volcanic eruption, landslide, or any other earth movement.

American argues the language "any other earth movement" applies in this case to exclude the loss. The Court of Appeals disagreed, classifying his exclusion as one relating only to earth movements caused by widespread natural disasters.

The Court of Appeals relied upon *Wyatt v. Northwestern Mut. Ins. Co.*, 304 F.Supp. 781 (D.Minn.1969), in reaching its conclusion. In *Wyatt*, the court construed a similar policy exclusion as found in this case to apply only to widespread natural disasters. The context of the language relating to earthquakes or other major ground movements indicated the exclusion was meant to apply only to natural disasters and not to

earth movements caused by human forces operating above the ground. *Id.* at 781–82.

The same analysis may be applied in this case. The phrase "any other earth movement" must be construed within the context of the exclusion as a whole and cannot be artifically separated from the other language. *Government Employees Ins. Co. v. DeJames,* 256 Md. 717, 261 A.2d 747 (1970). Taken in this manner, the earth movement exclusion must be construed to apply to earth movements caused by widespread natural disasters and not to those caused by human forces.

In this case, however, no evidence was submitted that the earth movement was caused by anything but human forces above the ground. Because of this, American Life has not met its burden of proof and the Court of Appeals' affirmance of the trial court's ruling that the exclusion did not apply is upheld.

**C.** *Defective Design Exclusion.* Finally, American Life argues because Reinertson testified that a poured concrete wall would have been stronger than a block wall, the loss is excluded under the defective design exclusion included in the policy. The policy excludes losses caused by "fault, defect, error or omission in [the] design, plan or specifications" of the building. Both the trial court and the Court of Appeals rejected this argument.

The only testimony concerning whether the wall should have been constructed out of poured concrete rather than concrete blocks was given by Reinertson. He testified that, although a poured wall would have been stronger than a block wall, it was not a design defect for the wall to have been constructed out of blocks. American Life offered no testimony concerning whether a block wall was a design defect in this case. Based on this, the trial court reasonably ruled American had not sustained its burden of proving a design defect and the appeals court affirmed. *Caledonia Community Hosp.,* 307 Minn. at 354, 239 N.W.2d at 770. The record requires that this decision must be upheld.

**D.** *Contributing Causes.* This court has held that an insured is entitled to recover from an insurer where a cause of the loss is not excluded under the policy. This is true even though an excluded cause may have also contributed to the loss. *Fawcett House, Inc. v. Great Central Ins. Co.,* 280 Minn. 325, 159 N.W.2d 268 (1968); *Anderson v. Connecticut Fire Ins. Co.,* 231 Minn. 469, 43 N.W.2d 807 (1950). In this case, the testimony established there were eight possible causes of the collapse, but no one factor was considered to be the overriding cause. Even if one of the three causes discussed above had been established, therefore, American could not deny coverage. The above-cited exclusions do not bar HNCC from recovering under the policy.

3. American Life contends HNCC failed to establish a prima facie case for damages at trial because the testimony regarding damages was speculative and conjectural. Both the trial court and Court of Appeals were satisfied that the record was sufficient to establish HNCC's damages in the amount of $65,000.

We have held that damages must be shown to be reasonably certain and cannot be speculative or conjectural. *Jackson v. Reiling,* 311 Minn. 562, 249 N.W.2d 896, *cert. denied,* 432 U.S. 906, 97 S.Ct. 2951, 53 L.Ed.2d 1078 (1977). Furthermore, an award of damages will not be denied merely because of difficulty in ascertaining them, and absolute certainty is not required. *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291 (1976). There is no general test for speculative or conjectural damages; such matters should usually be left to the judgment of the trial court. *Jackson,* 311 Minn. at 563, 249 N.W.2d at 897.

There were over 100 pages of testimony in the record concerning damages from the collapsed wall. Reinertson testified extensively on direct examination as to the specific amounts expended to rebuild the wall from nine detailed exhibits. On cross-examination, American attempted to refute several of these amounts by show-

ing they were either calculated incorrectly or calculated according to an allegedly arbitrary formula. American was able to establish that some damages HNCC had listed were either incorrect or based on flawed calculations. As a whole, however, the testimony established a loss and the costs submitted by HNCC established that loss at $65,000. These costs were neither speculative nor conjectural. The trial court found the testimony sufficient to prove damages in the amount of $65,000. That conclusion has support in the evidence and the Court of Appeals correctly affirmed.

4. Finally, American Life argues HNCC willfully misrepresented and defrauded American by attempting to include within the damages for the collapsed wall approximately $11,000 in costs unrelated to the accident. American claims that, under section 5 of the Builder's Risk policy, HNCC's claim is void for this attempted misrepresentation. Under section 5, the policy is void if the insured misrepresents any material fact relating to the contract. Both the trial court and Court of Appeals found no fraud existed under the record.

Under insurance provisions voiding a policy for misrepresentation or fraud, only willful or intentional misstatements calculated to deceive the insurer operate to void the policy. *Bahr v. Union Fire Ins. Co.*, 167 Minn. 479, 482, 209 N.W. 490, 491 (1926). Honest mistakes do not void the policy. *Goldberg v. Globe & Republic Ins. Co. of Am.*, 193 Minn. 600, 603, 259 N.W. 402, 403 (1933). Whether a statement is a willful or intentional misstatement is a question of fact. *Hodge v. Franklin Ins. Co.*, 111 Minn. 321, 324, 126 N.W. 1098, 1099 (1910).

The record indicates on three or four occasions Reinertson testified concerning certain costs as being within the damages for the collapsed wall that should not have been included within such damages. These misstatements, however, were not intentional. The record indicates Reinertson included these costs within the damages for the collapsed wall because the billings for these costs were received by HNCC after the wall collapsed and seemed unrelated to other work being done at the jobsite. While Reinertson was mistaken, his testimony indicates his mistakes were unintentional. When a mistake was pointed out, Reinertson readily admitted it should not be included within the damage estimate. Also, these three or four mistakes came during over 100 pages of detailed testimony concerning damages. While American Life attempts to characterize Reinertson as an "expert" on calculating construction damages, this is a mischaracterization. Reinertson had very little experience working with calculating the costs involved in construction. His expertise was in the actual construction of buildings. Based on this evidence, Reinertson's miscalculations cannot be considered willful and the prior rulings on this issue must be upheld.

The decision of the Court of Appeals is affirmed, but modified with respect to the proper standard to be used for determining when parties to an insurance contract may avoid the general statute of limitations for actions on a contract.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.