Clifford RYAN, Respondent,

v.

**ITT LIFE INSURANCE
CORPORATION,**
Appellant.

**No. C3–88–1757.**

Supreme Court of Minnesota.

Jan. 12, 1990.

**127**

John D. Hanson, Donohue, Rajdowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for appellant.

Luke M. Seifert, St. Cloud, for respondent.

KEITH, Justice.

Appellant, ITT Life Insurance Corporation (ITT Life), appeals the reversal of summary judgment in favor of ITT. ITT had moved the trial court for summary judgment on three grounds: (1) the six-year statute of limitation provided by Minn.Stat. § 541.05, subd. 1 (1988), (2) the three-year contractual limitation required by Minn. Stat. § 62A.04, subd. 2(11) (1988), and (3) plaintiff's noncompliance with the terms of the insurance contract. The trial court granted summary judgment on the grounds that the action was time barred. The court of appeals reversed the trial court's decision and held that the six-year statute of limitations did not bar suit. It also remanded "for findings on 1) whether the contractual three-year period of limitation contained in the insurance contract bars appellant's claim and 2) whether appellant's claim is barred by other provisions

in the insurance contract." *Ryan v. ITT Life Ins. Corp.*, 435 N.W.2d 164, 166 (Minn. App.1989).

Respondent, Clifford Ryan, received disability insurance as an employment benefit while he worked for Greenline Farms. The Accident Disability Income Policy ("Policy") was issued by ITT Life.

On February 7, 1980, Ryan was injured in a work-related accident while employed by Greenline Farms. The accident caused an abdominal wall tear requiring surgical repair. Unable to work while recuperating, he claimed and received disability benefits pursuant to the policy. When he resumed work on April 21, 1980, the disability payments terminated.

On June 13, 1980, Ryan was laid off by Greenline Farms and when recalled later, refused to return for personal reasons. As a result, his disability insurance policy with ITT Life ended on August 1, 1980.

Ryan had some difficulty keeping jobs after this time. He attributes the difficulty to back problems which he claims started with the injury on February 7, 1980, although he had seen a chiropractor for back problems, which he attributes to muscle strain, prior to his accident. He asserts that to relieve the back pain, he took so much medication his work pace slowed and he was unable to do the work required by the various jobs. He testified that as early as March 1980 he told his attending physician about his back problems. No medical or other documents, however, show that the injury caused the back pain. X-rays taken of his back in the spring of 1980 showed no signs of back injuries.

In November and December of 1981 Ryan again consulted his physician regarding his back problems. New x-rays were taken, but again there appeared no signs of back injury.

From testimony given at his deposition, Ryan considered himself totally disabled because of his back problems from February 1982 when he stopped seeking work. In March 1982, Ryan applied to the Social Security Administration for disability insurance benefits. After a hearing held before

an administrative law judge (ALJ), the judge decided that Ryan was "disabled" within the meaning of the Social Security Act. The conclusion was based on medical evidence, obtained from an examination of Ryan in March 1983, showing existence of a lumbar disc syndrome which necessitated avoidance of activities requiring mechanical stress to his back and permitted only sedentary work. The ALJ dated the disability from February 5, 1982, which was "the alleged onset date of disability."

Not until February 18, 1987, according to both parties, did Ryan commence suit against ITT for disability benefits under the Policy he had had while working on Greenline Farms.[1] Whether his action was barred by statutes of limitations is initially at issue.

1. Determination of whether summary judgment was properly granted on statutes of limitations grounds depends in part on construction of the implicated statutes. Construction of statutes is a question of law and is subject to de novo review on appeal. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Two statutorily prescribed limitations-of-actions periods have been applied to the ITT Policy in this case. One provides a six-year statute of limitations for actions brought "[u]pon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed."[2] Minn.Stat. § 541.05, subd. 1(1) (1988). The other, contained in the policy contract itself, provides a three-year limita-tions period pursuant to Minn.Stat. § 62A.04, subd. 2(11) (1988):

> No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirement of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

ITT policy, "Legal Actions" provision at 7.

The ITT policy at issue contained the provisions required by section 62A.04, subd. 2 for standard accident and sickness insurance policies as defined in Minn.Stat. § 60A.06, subd. 1(5)(a) (1988). The provision "Legal Actions" found in respondent's policy is word-for-word the same as that found in Minn.Stat. § 62A.04, subd. 2(11) (1988). It forms part of Minn.Stat. ch. 62A (1988) which constitutes a code for accident and health insurance. *Cf. Lindskog v. Equitable Life Assur. Soc'y*, 209 Minn. 13, 16–17, 295 N.W. 70, 71 (1940) (considering one of the forerunners of present day Minn.Stat. §§ 62A.01 to 62A.56 (1988), noted that the sections constitute "what is intended to be a code with reference to accident and health insurance"). Case law regarding insurance policies governed by statute has recognized by implication that the specific limitations provision of section 62A.04, subd. 2(11) controls over the general six-year period of section 541.05, subd. 1(1). *See, e.g., Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807, 811–12 (Minn.1977) (interpreting section 62A.04,

---

**1.** Respondent in his brief admits that no Notice of Claim was timely filed, nor were any Proofs of Loss filed under the terms of the policy.

**2.** In *Henning Nelson Constr. Co. v. Fireman's Fund American Life Ins.*, 383 N.W.2d 645, 650 n. 5 (Minn.1986), this court noted that the trial court in *Henning* had misconstrued the final phrase of section 541.05, subd. 1(1), which states that the six-year limitations period applies where "no other limitation is expressly prescribed." *Id.* at 650 n. 5. We wrote that the "plain meaning of section 541.05, subd. 1(1), implies that the 'other limitations' language refers to *contractual* limitations and not *other statutes.*" *Id.* (emphasis added). The footnote language is dicta in so far as it states that that language does not refer to *other statutes* because that conclusion had no effect on the holding of the case.

In *Henning*, no statutorily prescribed limitations period other than the six-year period of section 541.05, subd. 1(1) was involved. The insurance policy at issue was a "Builder's Risk" policy containing a voluntary limitations provision that purportedly modified the statutorily prescribed six-year limitations period. *Id.* at 650. The import of footnote 5 is limited to that situation. The insurance policy at issue here is governed by the statutory provisions appearing in Minn.Stat. ch. 62A (1988) as part of Minnesota's insurance code covering accident and sickness policies.

subd. 2 "Proofs of Loss" and "Legal Actions" provisions as applicable statute of limitations); *cf. Rottier v. German Insurance Co.*, 84 Minn. 116, 117–19, 86 N.W. 888, 889–90 (1901) (interpreting the standard fire-insurance limitations period provision as applicable limitation and not referring to the general six-year limitations provision for contracts which also existed at that time).

Based on the specificity and code nature of section 62A.04, subd. 2(11) coupled with case law recognition of the application of express limitations provisions contained within specific statutes governing insurance policies, we hold that the six-year limitations period is inapplicable to an insurance policy governed by Minn.Stat. § 62A.04 and reverse the court of appeals on this issue. The three-year limitations period contained in the policy pursuant to Minn.Stat. § 62A.04, subd. 2(11) applies.

2. ITT Life contends that even if the three-year limit applies, Ryan's action is barred because he did not bring suit within three years after the Policy terminated. ITT Life's contention misconceives when the three-year period of section 62A.04, subd. 2(11) begins to run.

■ The commencement of the running of the three-year limitation does not depend on when the policy terminated, but rather on when proofs of loss must be furnished, because the filing of written proofs of loss controls when insured can commence an action under the Legal Actions provision. We addressed the issue in *Laidlaw v. Commercial Insurance Company of Newark*, 255 N.W.2d 807, 811 (Minn.1977). We held that for continuing loss where proofs of loss must be furnished "within 90 days after termination of the period for which the [Company] is liable," *Id.* at 811, the statute of limitations contained in the "Legal Actions" provision did not begin to run until 90 days *after the end of the total continuous period of disability for which the company was liable.* The court construed the phrase "the period for which the [Company] is liable" contained in the standard "Proofs of Loss" provision as meaning "the total continuous period of liability, be it short or long." *Id.* at 811.

■ The ITT Policy at issue here contains and is governed by the same required statutory provisions on Proofs of Loss and Legal Actions as in *Laidlaw*. Our holding in *Laidlaw* governs here. When an insured claims total disability benefits under a policy governed by section 62A.04, subd. 2(7) and (11), the limitations period will not begin to run until 90 days after termination of the continuous period of disability. Thus, Ryan cannot be barred by the three-year limitations statute if he has been continuously totally disabled under the terms of the Policy.

Upon review of a summary judgment, the question becomes whether a genuine issue of material fact exists as to the existence and continuity of Ryan's total disability. The answer depends on application of the terms of the Policy to the facts as found.

The Policy states that ITT Life will "pay the benefits provided by [the] policy for loss resulting from injury as defined." Policy at 1. Injury is defined as "accidental bodily injury which occurs while this policy is in force." *Id.* at 2. The Policy expressly notes in an "Exceptions" section that "No benefit provided under this policy will be payable for losses * * * beginning while this policy is not in force." *Id.* The Benefits section says that total disability benefits will be paid "[i]f the Insured sustains loss * * * [that] within thirty days from the date of the accident cause[s] total disability requiring the regular care of a physician." *Id.* at 3. Thus, for Ryan to be covered by ITT Life, he must have become totally disabled, to an extent requiring the regular care of a physician, within thirty days of his accident on Feb. 7, 1980.

"Total Disability" is defined in the Policy. For the first 5 years of disability, total disability means "the complete inability of the Insured to engage in his regular occupation." Policy at 2. After that first five year period, total disability means "the inability of the Insured to engage in any gainful occupation for which he is reasonably fitted by education, training, or experi-

ence." *Id.* To be found continuously totally disabled under the Policy, then, Ryan must have been unable to engage in his regular occupation within thirty days of the accident.

■ The Policy's definition of total disability during the first five years makes that portion of the policy equivalent to a policy insuring against occupational disability resulting from accidental bodily injury. Minnesota law has long held that total disability in the occupational sense does not mean absolute physical inability to engage in any kind of business pertaining to the occupation. *Lobdill v. Laboring Men's Mutual Aid Ass'n*, 69 Minn. 14, 16–17, 71 N.W. 696, 697 (1897). On the other hand, inability to perform some aspects of the insured's occupation does not rise to the level of total disability. *Id.*, 69 Minn. at 17, 71 N.W. at 697. Total disability in the occupational sense does mean "the inability to perform the substantial and material parts of one's occupation in the customary and usual manner and with substantial continuity." *Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807, 812 (Minn. 1977) (citing *Blazek v. North American Life & Casualty Co.*, 251 Minn. 130, 135 n. 2, 139–141, 87 N.W.2d 36, 41 n. 2, 44–45 (1957)). Once the legal interpretation of the Policy is made, determination of whether Ryan was totally disabled under the terms of that Policy is a question of fact. *See Blazek v. North American Life & Casualty*, 251 Minn. 130, 139–41, 87 N.W.2d 36, 44–45 (1957).

■ ITT Life, in its pleadings and memoranda in support of its motion for summary judgment, did not present the issue of whether Ryan was totally disabled while the Policy was in effect. Rather, ITT Life requested the trial court to make its decision based upon the law, rather than disputed facts. The Memo included as an attachment, however, sworn testimony by Ryan stating that he worked a reduced work load upon his return to Greenline Farms on April 21, 1980. Whether the work performed constitutes performance of the substantial and material parts of Ryan's regular occupation is a question of

fact addressed by neither the trial court nor the parties. Therefore, on review of a summary judgment motion, we must remand for further findings on this issue.

■ 3. Even if Ryan was unable to perform the substantial and material parts of his regular occupation upon returning to work at Greenline Farms on April 21, 1980, thereby showing he was totally disabled, his non-compliance with provisions of the policy may bar suit. *See, e.g., Mitchell v. Equitable Life Assur. Soc'y of U.S.*, 310 Minn. 219, 245 N.W.2d 618, 620–21 (1976) (insured barred from suit by failing to file employee's statement and physician's certificate). One of the provisions requires that "[w]ritten notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by the policy * * *." Policy at 7. This court upholds notice provisions because the policy behind the requirement is to give the insurer "an opportunity for prompt investigation so as to protect itself against fraudulent or exorbitant claims and, while the matter is fresh in the minds of all, to appraise and determine a disposition by way of settlement or defense." *Sterling State Bank v. Virginia Surety Co.*, 285 Minn. 348, 354, 173 N.W.2d 342, 346 (1969). Ryan concedes that no timely notice of claim was given. Nevertheless, our law has not considered mere failure to give timely notice fatal to an insured's claim under an accident and sickness policy as long as the insurer was not prejudiced by the delay. *See Reliance Ins. v. St. Paul Ins. Cos.*, 307 Minn. 338, 341–43, 239 N.W.2d 922, 924–25 (1976) (citations omitted).

Mere passage of time between an event and notification can be prejudicial, but such a determination is dependent on the circumstances of the case. *Reliance*, 307 Minn. at 343, 239 N.W.2d at 925. As the circumstances of the instant case involve facts regarding possible prejudice which were neither presented in evidence nor considered by the trial court when it granted summary judgment, a ruling on the issue by this court on review of the summary judgment is inappropriate. *See Caledonia*

*Community Hospital v. Liebenberg, Smiley, Glotter & Assocs.*, 308 Minn. 255, 258–59, 248 N.W.2d 279, 281 (Minn.1976) (on rehearing).

The trial court did not consider the facts of Ryan's disability nor whether Ryan's noncompliance with Policy provisions barred suit. Consequently, we remand to the trial court for action consistent with this opinion.

Reversed in part, affirmed in part and remanded.