PEGGY ROSE REVOCABLE TRUST
u/a dated April 11, 2000, Petitioner,
Appellant,

v.

Kenneth EPPICH, Respondent,

Smuckler Architects, Inc.,
et al., Defendants.

No. C3–00–1163.

Supreme Court of Minnesota.

March 21, 2002.

Foley & Mansfield, P.L.L.P., John T. Trout, Stephen L. Wilson, Minneapolis, for Appellant.

Bassford, Lockhart, Truesdell & Briggs, P.A., Dale M. Wagner, Charles E. Lundberg; Dorsey & Whitney L.L.P., Steven K. Champlin, Minneapolis, for Respondent.

Minn. Atty. Gen. Mike Hatch, David M. Aafedt, Assistant Attorney General, St. Paul; Thomsen & Nybeck, P.A., Donald D. Smith, David J. McGee, Edina, for Amicus Curiae.

## OPINION

RUSSELL A. ANDERSON, Justice.

This case arises from the sale of a home by Kenneth Eppich ("Seller") to Peggy Rose and Keith Kajander (collectively "Buyers") in January 1996. In addition to the purchase agreement, the parties signed an arbitration agreement subjecting all claims related to the property, including fraud, to binding arbitration and providing that such claims must be filed within 18 months of the date of the closing on the property. Two years after closing and after discovering the home had extensive water problems, Buyers filed suit alleging that Seller was aware of the home's defects at the time of the sale and failed to properly disclose them. Buyers also filed a request for arbitration asserting that Seller's fraudulent acts tolled the 18-month contractual limitations period until the fraud was discovered. Seller moved for summary judgment on the ground that Buyers' were bound by the arbitration agreement and that, based on that agreement, their claims were time barred.

The district court denied Seller's motion for summary judgment and directed the parties to submit their dispute to binding arbitration, reasoning that if Seller fraudulently concealed the moisture problems, the 18–month limitations period would have been tolled. The arbitrator found Seller liable to Buyers as a result of his fraudulent representations, and the district court confirmed the arbitrator's award. The court of appeals reversed the district court, finding no basis on which to toll an otherwise reasonable limitations period which had expired before Buyers filed their claim. Buyers, now deceased and represented by the Peggy Rose Revocable Trust, seek a reversal of this ruling and a reinstatement of the arbitrator's award in their favor. Because we conclude that an 18–month limitations period measured from the date of a real estate closing is unreasonable as applied to this claim of fraud where undisclosed water problems resulted in structural damage not readily apparent to Buyers, we reverse the court of appeals and reinstate the district court's decision confirming the arbitrator's award.

This case involves the sale of a home located in the Cedar Lake area of Minneapolis. The home was designed by Jack Smuckler and Smuckler Architects, Inc., and constructed by Smuckler Corporation and its subcontractors during the years 1989–90 for Seller, who thereafter occupied the home. In late 1994, Seller listed the home for sale with Burnet Realty, at which time he completed and executed a document entitled "Real Estate Transfer Disclosure Statement" (Disclosure). Seller represented in the Disclosure that he had experienced no "leakage or other problems" pertaining to the roof,[1] that there were no "leakage/seepage" condi-

tions with respect to the basement or crawl space, and that he was aware of no "other known defects in or on the property."

On November 18, 1995, Seller entered into a purchase agreement for the sale of his home to Buyers for $510,000. In addition to the information Seller provided to Buyers in the Disclosure, Seller represented by completing and executing the purchase agreement that he had "not had a wet basement" and that he had "not had roof, wall or ceiling damage caused by water or ice build-up."

All parties acknowledged that they had received and had an opportunity to review the "Arbitration Disclosure and Residential Real Property Arbitration Agreement" (Arbitration Agreement) that accompanied but was not a part of the Purchase Agreement. The Arbitration Agreement, in pertinent part, informed the parties of the following:

> You have the right to choose whether to have any disputes about the physical condition of the property that you are buying or selling decided by binding arbitration or by a court of law. By agreeing to binding arbitration **you give up your right to go to court.** \* \* \* The ARBITRATION AGREEMENT is not part of the purchase agreement. **Your purchase agreement will still be valid whether or not you sign the AR-BITRATION AGREEMENT.**
>
> \* \* \*
>
> All disputes about or relating to the physical condition of the property are subject to arbitration under the ARBITRATION AGREEMENT. This includes claims of fraud, misrepresentation, warranty and negligence.

---

1. Despite answering "No" to the questions regarding whether there were ever problems with the home's roof, Seller added the following notation in the space provided for additional details regarding "Yes" answers: "Rain—Outside & Garage—Fixed."

\* \* \*

**A request for arbitration must be filed within 18 months of the date of the closing on the property or else the claim cannot be pursued.**[2]

The Arbitration Agreement was signed by all parties, including Seller, Buyers, and each of their real estate agents.

Subsequently, a representative from Structure Tech, Inc. inspected the home pursuant to a contract with Buyers.[3] The closing for the sale of the home occurred on January 2, 1996, and Buyers moved in shortly thereafter.

In May 1996, Buyers sought to have the exterior of the home painted but were told the moisture content in the siding was too high. The painter returned later that summer but found the siding was still too wet to paint, at which time he suggested to Buyers that they attempt to determine what was causing the high moisture level.

In late 1996 or early 1997, Buyers noticed some leaking in the garage. After ripping apart the decking above the garage, Buyers discovered water "pooling" rather than draining properly. Later that spring, Buyers inquired about replacing a window that had a deteriorating frame and they were told that the sash of several windows needed replacing. Buyers spoke to a representative from Pella Windows

and also had Jack Smuckler come out to their home in an effort to determine the source of the problem. Ultimately, in October 1997, large portions of the home's siding were removed at which time Buyers discovered that repeated leaking and prolonged exposure to moisture had made the home structurally unsound.

Rose testified at her deposition that the level of rotting and deterioration observed by contractors present when the siding was removed suggested to them that the water problem dated back to the initial construction of the home. Consistent with that conclusion, Buyers recovered documents indicating that Seller was experiencing serious water problems as early as 1991, only one year after construction was completed. In addition, a neighbor who had considered purchasing the home prior to Buyers' offer indicated that Seller made several statements to him about water damage and leakage in the home, and that Seller acknowledged that Smuckler homes had a reputation for such problems.

In February 1998, two years after closing, Buyers commenced this lawsuit in district court seeking damages related to the cost of reconstructing their home based upon claims that Seller made false representations regarding the home's condition.[4]

---

**2.** These principles were reiterated in the paragraph immediately preceding the signature lines where it was stated in bold print, "THIS IS AN OPTIONAL, VOLUNTARY AGREEMENT" and parties were reminded that by signing it, they agreed that "[a]ny dispute \* \* \* about or relating to the physical condition of the property covered by the purchase agreement \* \* \* including claims of fraud, misrepresentation, warranty and negligence, shall be settled by binding arbitration." Neither the Arbitration Agreement, nor the purchase agreement, contained a severability clause.

**3.** It appears no major defects were discovered in the inspection; however, some potentially

relevant observations were noted in the inspector's report, with respect to exterior walls: "Stains on siding at north consistent with condensation" and, regarding the window of one of the bedrooms: "Window in marginal condition due to condensation." In her deposition, Rose acknowledged that the inspector warned her about high humidity in the home, but denied being informed of any condensation problem inside the walls of the nature and extent ultimately discovered.

**4.** In addition to Seller, the named defendants originally included Smuckler Architects, Inc., Jack D. Smuckler, Smuckler Corporation, and Structure Tech, Inc. Following Kajander's death, Rose settled with Smuck-

They asserted that Seller was aware of the home's moisture problems prior to the date of the purchase agreement but failed to reveal such defects when completing the Disclosure. They argued that Seller wrongfully concealed this information and that his cryptic notations in the Disclosure were misleading and insufficient to alert them to the true nature and extent of the ongoing water problems.

On August 3, 1998, after limited discovery, Seller moved for summary judgment on grounds that the parties' arbitration agreement was binding and enforceable, and that Buyers' claims were barred by the 18–month limitations period set forth in the Arbitration Agreement. On January 26, 1999, while Seller's motion was pending, Buyers filed a demand for arbitration with the American Arbitration Association in order to protect their interests in the event the court ruled that arbitration was required.

The district court denied Seller's motion for summary judgment, concluding that the Arbitration Agreement was valid and enforceable, that fraudulent acts toll contractual limitations periods the same as statutory limitations periods until such time as the fraud is discovered or should have been discovered, and that genuine issues of material fact existed as to whether the plaintiffs were reasonably diligent in their discovery of the home's defects and whether Seller fraudulently concealed knowledge of the home's moisture problems. Accordingly, the district court held that summary judgment was inappropriate and directed the parties to submit their dispute to binding arbitration.

After a three-day hearing conducted in October 1999, the arbitrator determined that Seller deliberately committed fraud,

that Buyers relied upon Seller's intentional misrepresentations, and that, exercising reasonable diligence, Buyers did not discover the cause of the moisture problem in the home until the fall of 1997. The arbitrator also found that, within 18 months following that discovery, Buyers properly filed a demand for arbitration. Finally, the arbitrator concluded that Buyers were entitled to damages of $154,812.22. On Buyers' subsequent motion, the district court confirmed the arbitration award and dismissed Seller's motion to vacate the award in which Seller asserted that the arbitrator exceeded his authority, that Buyers waived the right to seek arbitration by filing the lawsuit, and that it was not proper to toll the contractual limitations period agreed upon by the parties.

This final point served as the focus of Seller's appeal, where he argued that the district court committed legal error in ruling that the 18–month limitations provision found in the parties' Arbitration Agreement was subject to tolling doctrines. The court of appeals accepted Seller's argument and reversed the district court, concluding that the six-year limitations period for fraud actions set forth in Minn.Stat. § 541.05, subd. 1(6) (2000) did not prohibit parties from agreeing to a shorter limitations period and finding no authority favoring the tolling of an otherwise reasonable contractual limitations period even as applied to acts of fraud. We granted Buyers' subsequent petition for review of this decision.

■■■ This case presents the question whether the court of appeals properly concluded that, on the facts of this case, the district court erred in tolling the 18–month limitations period and submitting the dis-

---

ler Architects, Inc. and Jack D. Smuckler, and dismissed her claims against all remain-

ing defendants except Seller in May of 2000.

pute to binding arbitration, and that the Arbitration Agreement's 18–month limitations period measured from the date of closing was reasonable. Appellate courts review a determination of arbitrability de novo. *Freeman v. Duluth Clinic, Ltd.*, 334 N.W.2d 626, 629 (Minn.1983). Further, where arbitration is appropriate, arbitrators are the final judges of both law and fact; every reasonable presumption is to be exercised in favor of the finality and validity of the arbitration award, thus the scope of judicial review of an arbitration award is extremely narrow. *State Auditor v. Minnesota Ass'n of Professional Employees*, 504 N.W.2d 751, 754–55 (Minn. 1993); *David Co. v. Jim W. Miller Const., Inc.*, 444 N.W.2d 836, 840 (Minn.1989).

■ This court has repeatedly recognized the value of arbitration in providing parties with an efficient, inexpensive means of dispute resolution. *See Correll v. Distinctive Dental Services, P.A.*, 607 N.W.2d 440, 445 (Minn.2000) (acknowledging efficiency as the purpose of the arbitration act); *Schmidt v. Midwest Family Mut. Ins. Co.*, 426 N.W.2d 870, 875 (Minn.1988) (noting that the law of our state clearly establishes a policy in favor of arbitration); *Valentine v. Conticommodity SVS, Inc.*, 344 N.W.2d 405, 407 (Minn. 1984) (stating that arbitration is generally encouraged); *Freeman*, 334 N.W.2d at 629 (indicating that public policy favors arbitration of disputes where parties have so agreed). Minnesota Statutes § 572.08 (2000) specifically states that agreements to arbitrate are valid and enforceable absent grounds for revocation of the contract.[5] Further, parties may agree to arbitrate any type of dispute, including

fraud. *Michael–Curry Cos. v. Knutson Shareholders*, 449 N.W.2d 139, 141 (Minn. 1989). An order confirming an arbitration award is enforced as any other judgment of the court. Minn.Stat. § 572.21 (2000).

■ Parties may limit the time within which legal claims may be brought provided there is no statute specifically prohibiting the use of a different limitations period in such a case and the time fixed is not unreasonable. *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 650–51 (Minn.1986); *Prior Lake State Bank v. National Sur. Corp.*, 248 Minn. 383, 388, 80 N.W.2d 612, 616 (1957). Whether the contractual limitations period is reasonable depends upon the particular facts presented; what is acceptable in one case may be objectionable in another. *See, e.g., Henning Nelson*, 383 N.W.2d at 651, 651 n. 7 (affirming trial court finding that one-year limitations on bringing of legal actions in casualty loss setting was unreasonably short, but noting that one-year contractual limitations have been upheld under different circumstances).

■ Our previous case law addressing reasonableness of a limitations period has been confined to the context of a contractual agreement on a limitation period for bringing a cause of action in district court. *See, e.g., Henning Nelson*, 383 N.W.2d at 645; *Prior Lake*, 248 Minn. at 383, 80 N.W.2d at 612; *Gendreau v. State Farm Fire Ins. Co.*, 206 Minn. 237, 288 N.W. 225 (1939); *Stewart v. Nat'l Council of Knights & Ladies of Security*, 125 Minn. 512, 147 N.W. 651 (1914). However, arbitration is intended to be a means of dispute resolution that avoids the need for

---

5. Minnesota Statutes § 572.08 provides, in pertinent part,

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

court action. *See Schmidt,* 426 N.W.2d at 875 (indicating that arbitration is not merely a precursor to litigation; rather, it is a means through which contracting parties may achieve final resolution of disputes). Arbitration awards may be set aside for only limited reasons, *see* Minn. Stat. § 572.19 (2000), and are enforceable by judgment just as a successful claim litigated in court is enforceable. Minn. Stat. § 572.21. Given the finality of the determination of rights made in arbitration, we believe that contractual limitations periods for claims to be arbitrated must be reasonable, just as such limitations periods for claims brought in court must be reasonable.

In the case before us, the parties signed an agreement subjecting all disputes "includ[ing] claims of fraud" to arbitration and providing that a request for arbitration of such claims "must be filed within 18 months of the date of the closing on the property or else the claim cannot be pursued." Seller and *amicus* Minnesota Association of Realtors (MAR) argue this period is reasonable and results from considerable study and experience with previous versions of the Arbitration Agreement.[6] Buyers and *amicus* Attorney General contend that such an agreement should not be enforced in this case to protect Seller against his own fraud and that to do so would violate public policy and depart from well-established law.[7]

In assessing the reasonableness of this provision, as well as public policy, we find it useful as a starting point to consider what parameters the legislature has determined to be appropriate with respect to fraud claims. Minnesota law provides a six-year statutory limitations period for fraud. Moreover, the claim is not deemed to have accrued *until discovery of the facts constituting the fraud.* Minn.Stat. § 541.05, subd. 1(6) (2000) (emphasis add-

---

6. The Arbitration Agreement was authored by MAR and is used extensively throughout the state. As Seller and *amicus* MAR point out, the 18–month limitations period contained in this agreement was not arbitrarily chosen, but instead resulted from significant deliberation on the part of the Oversight Committee of the Residential Real Property Arbitration System and input from the Minnesota Department of Commerce. An earlier version of the form provided that the period within which a request for arbitration could be filed expired six months from the date the buyer *discovered* or *should have discovered* a defective condition; however, this led to disputes over when the problem was or should have been discovered, thus defeating the aim of resolving disputes in a less costly and time-consuming manner. Consequently, an 18–month bright-line rule was implemented, intending to provide a certain level of finality and predictability while at the same time giving the buyer the benefit of experiencing all four seasons on the property and an additional six months within which to file a request for arbitration.

7. There is nothing to suggest that Seller procured Buyers' signatures on the Arbitration Agreement through duress, undue influence, fraud, or misrepresentation. The Arbitration Agreement, while obviously related to the real estate purchase, is clearly identified as an independent contract. This fact differentiates the present situation from the circumstances underlying *General Elec. Co. v. O'Connell,* 118 Minn. 53, 136 N.W. 404 (1912), and *Ganley Bros. v. Butler Bros. Bldg. Co.,* 170 Minn. 373, 212 N.W. 602 (1927), which Buyers cite in support of their argument that the Arbitration Agreement's limitations period should not be enforced to permit seller to shield his own misconduct. In those cases, the defendant sought to hide behind an instrument that was itself secured by fraud. Although Buyers now allege fraud in the inducement with respect to the Arbitration Agreement, this claim was not made against Seller in Buyers' initial complaint, the Agreement has since been declared valid by both the district court and the court of appeals and, as Seller correctly points out, its validity has not previously been challenged by Buyers. Accordingly, the issue of fraud in the inducement as to the Arbitration Agreement is not properly before this court.

ed). In *Schmucking v. Mayo,* 183 Minn. 37, 40, 235 N.W. 633, 634 (1931), this court articulated the reasons behind the so-called discovery rule in cases of fraud:

> First, one who cannot assert his right because the necessary knowledge is improperly kept from him is not within the mischief the statute [of limitations] was intended to remedy; but is within the spirit of the law that restrains its operation. * * * Secondly, a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so.

Thus, Buyers and *amicus* Attorney General correctly assert that there is longstanding support for the tolling of the statutory limitations period until discovery for claims of fraud under Minnesota law. Here, the district court determined that parties to private agreements should be entitled to this same protection from fraudulent conduct.

▆ The problem, however, is that arbitration "is not the bringing of an action under any of our statutes of limitation" (*Har–Mar, Inc. v. Thorsen & Thorshov,*

*Inc.,* 300 Minn. 149, 154, 218 N.W.2d 751, 755 (1974) (quoting *Skidmore, Owings & Merrill v. Connecticut Gen. Life Ins. Co.,* 25 Conn.Supp. 76, 84, 197 A.2d 83, 87 (1963))), and "parties are generally free to structure their arbitration agreements as they see fit." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The parties in this case agreed to an 18–month limitations period and did not provide for tolling of the limitations period until discovery in the case of fraud, therefore, there was no basis on which to impose the statutory discovery rule here. Nonetheless, the question remains whether the limitations period as written in the Arbitration Agreement is reasonable on these facts.

Fraud, by its very essence, hides the true nature of facts which may be difficult and time-consuming for unsuspecting parties to discover on their own. This principle is reflected in the discovery rule applied to fraud claims under Minnesota's statute of limitations, which provides that a fraud claim does not accrue until discovery.[8] Although we maintain that parties

---

**8.** *See* Minn.Stat. § 541.05, subd. 1(6) (2000). This concept is recognized in a large majority of states which, by statute or case law, have established that a claim of fraud does not accrue until it is discovered or should have been discovered by exercise of reasonable diligence, or some similar standard. *See, e.g.,* Ala.Code § 6–2–3 (1993); Ariz.Rev.Stat. Ann. § 12–543 (West 1992); Cal.Civ.Proc.Code § 338(d) (West 1982 & Supp.2002); Colo. Rev.Stat. § 13–80–108 (2001); Fla. Stat. ch. 95.031(2)(a) (2001); Ga.Code Ann. § 9–3–96 (1982); Idaho Code § 5–218 (Michie 1998); Iowa Code § 614.4 (2001); Kan. Stat. Ann. § 60–513(a)(3) (1994 & Supp.2001); Ky.Rev. Stat. Ann. § 413.130(3) (Michie 1992 & Supp. 2001); Me.Rev.Stat. Ann. tit. 14, § 859 (West 1980 & Supp.2001); Miss.Code Ann. § 15–1–49 (1995); Mo.Rev.Stat. § 516.120(5) (2000); Mont.Code Ann. § 27–2–203 (2001); Neb. Rev.Stat. § 25–207(4) (1995); Nev.Rev.Stat. § 11.190(3)(d) (2001); N.H.Rev.Stat. Ann. § 508:4 (1997); N.M. Stat. Ann. § 37–1–7 (Michie 1990); N.Y. C.P.L.R. Law § 213 (McKinney 1990); N.C. Gen.Stat. § 1–52(9) (1999); N.D. Cent.Code Ann. § 28–01–16 (Michie 1991); Ohio Rev.Code Ann. § 2305.09 (Anderson 2001); Okla. Stat. tit. 12 § 95(3) (1991 & ·Supp.1997); Or.Rev.Stat. § 12.110(1) (1999); S.C.Code Ann. § 15–3–530(7) (Law. Co-op.1977 & Supp.2000); S.D. Codified Laws § 15–2–3 (Michie 1984); Utah Code Ann. § 78–12–26(3) (1996); Va.Code Ann. § 8.01–249 (Michie 2000); Wash. Rev. Code Ann. § 4.16.080(4) (West 1988 & Supp. 2002); Wis. Stat. Ann. § 893.93(1)(b) (West 1997); Wyo. Stat. Ann. § 1–3–106 (Michie 2001); *Knox College v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976, 980–81

may agree to shorter limitations periods than provided by statute, there is a difference between merely shortening the time within which an existing claim may be brought and altering the date on which a cause of action accrues.

Generally, a cause of action accrues when the action can be brought without being subject to dismissal for failure to state a claim. *See Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999). Under the terms of the Arbitration Agreement here, however, a party could be precluded from bringing a fraud claim to arbitration before the claim accrued; i.e., before the party knew or reasonably should have known that he or she was harmed by another's conduct.[9] Therefore, in this case involving a home sale, where pre-existing water problems led to structural damage, the extent of which could only be discovered by remov-

ing portions of the home's exterior, we conclude that an arbitration agreement provision subjecting all claims to an 18–month limitations period running from the date of the real estate closing is not within the bounds of reasonableness when applied to the claim of fraud.[10]

Seller argues that given this conclusion the arbitration proceeding must be set aside and this dispute remanded for trial because Seller gave up numerous legal rights in reliance on the enforceability of the Arbitration Agreement as a whole and it would be unjust for the court to now enforce some provisions and not others. While it is not accurate to state that a court can never enforce certain parts of a contract while modifying others,[11] Seller is correct that it is not ordinarily the function of the courts to rewrite contract provisions fully considered and agreed upon by the

(1981); *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87–88 (Ind.1985); *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 749 A.2d 796, 800 (2000); *Bowen v. Eli Lilly & Co., Inc.,* 408 Mass. 204, 557 N.E.2d 739, 741 (1990); *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1135 (6th Cir.1995) (applying Michigan law); *SASCO 1997 NI, LLC v. Zudkewich,* 166 N.J. 579, 767 A.2d 469, 475 (2001); *Connaught Laboratories, Inc. v. Lewis by Lewis,* 124 Pa.Cmwlth. 568, 557 A.2d 40, 43 (1989); *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex.1997); *Union School Dist. No. 20 v. Lench,* 134 Vt. 424, 365 A.2d 508, 511 (1976).

9. In fact the arbitrator's finding in this case that Buyers, using reasonable diligence, did not discover the cause and magnitude of the home's moisture problems until the fall of 1997—more than 18 months after the closing—suggests such a possibility since by that point all claims "including fraud" were precluded.

10. In doing so, we join the court of appeals in rejecting Seller's argument that the issue whether the contractual limitations period was reasonable is not properly before the court on appeal because it was not raised in the district court and the district court did not

rule on it. *See Thayer v. American Fin. Advisers, Inc.,* 322 N.W.2d 599, 604 (Minn.1982) (indicating that a reviewing court is limited to considering only those issues presented and considered by the district court). As the court of appeals noted, the pre- and post-arbitration proceedings in the district court focused on the limitations period; thus the *Henning* test for assessing the reasonableness of a limitations period cannot be ignored.

11. This court has, for instance, upheld applications of the "blue pencil" doctrine to modify the terms of unreasonable restrictive covenants in otherwise enforceable employment agreements. *See, e.g., Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127, 132 (Minn. 1980); *Bess v. Bothman,* 257 N.W.2d 791, 795 (Minn.1977). Additionally, the court in *Henning Nelson,* finding a one-year contractual limitations period unreasonable, relied on another provision in the contract as a basis on which to default to the statutory limitations period of six years and otherwise enforce the agreement. *See Henning Nelson,* 383 N.W.2d at 651 (amending the insurance policy in question based on a provision requiring it to conform to state law).

parties. *See Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 295, 135 N.W.2d 681, 687 (1965). This is particularly true in the case of an arbitration agreement where court interference defeats the parties' objective and public policy would favor its enforcement. Thus, as we have stated, we agree with the court of appeals that it is not proper to impose a tolling requirement for claims of fraud where the plain language of the agreement does not suggest that one was contemplated.

■■■ However, it is clear that the parties here intended to arbitrate all disputes relating to the real estate sale. Indeed, the parties specifically included claims for fraud in the type of actions to be arbitrated. In *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972), we confirmed that when a clear intent to arbitrate a dispute is present, the dispute is for the arbitrators to determine and not the court. We are further dissuaded from accepting Seller's suggestion that the arbitration be set aside and remanded for trial in light of the fact that Buyers, the primary witnesses to the sale transaction and the damage, are both deceased. Under these particular circumstances, and given the parties' clear intent from the face of the agreement that fraud claims be arbitrated, we believe affirming the arbitration award is proper. Accordingly, we reverse the court of appeals and

reinstate the district court's decision confirming the arbitrator's award in favor of Buyers.[12]

BLATZ, C.J., and LANCASTER, J., took no part in the consideration or decision of this case.

---

**12.** Our decision today is fact-specific and is not intended to diminish the right of private parties to freely contract. *See, e.g., Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982) (recognizing the public interest in preserving freedom of contract); *Rossman v. 740 River Drive*, 308 Minn. 134, 136, 241 N.W.2d 91, 92 (1976) (naming the public policy favoring freedom of contract as a potentially dominant factor when weighing the enforceability of certain contractual provisions); *James Quirk Milling Co. v. Minneapolis & St. L.R. Co.*, 98 Minn. 22, 23, 107 N.W. 742, 742 (1906) (proclaiming it public policy that freedom of contract remain inviolate except only in cases which contravene some principle which is of even more importance). Agreements that limit the period within which claims for fraud may be brought are not automatically void and will be assessed under the conditions and within the context in which they arise. Under these facts we merely conclude, as other jurisdictions have previously acknowledged, that "if [a contractual limitations period] is not reasonable or, * * * it is unconscionable, then it is not permitted regardless of the parties' freedom to contract." *General Electric Credit Corp. v. Home Indemnity Co.*, 168 Ga.App. 344, 309 S.E.2d 152, 156 (1983).