**FAIRWAY VILLAGE CONDOMINIUM ASSOCIATION, INC. A Non–Profit Corporation; Carroll B. Clark and wife, Jean Clark; Ronald L. Hansen; Gene J. Tharpe and wife, Betty H. Tharpe; Edward J. Rice and wife, Sheila O. Rice; Kenneth D. Wingert and wife, Margaret D. Wingert; For Themselves Individually And As Representatives of a Class, Plaintiffs/Appellants,**

v.

**CONNECTICUT MUTUAL LIFE INSURANCE COMPANY; Boyle Investment Company; S.B. Condo Corp., Defendants/Appellees.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

May 31, 1996.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 28, 1996.

David F. Leake, William King Self, Benham Leake, Martin B. Daniel, Memphis, for Plaintiffs/Appellants.

Ernest G. Kelly, Jr., Evans & Petree, Memphis, for Defendants/Appellees.

FARMER, Judge.

In this class action lawsuit, Plaintiffs–Appellants, Fairway Village Condominium Association, Inc., Carroll B. and Jean Clark, Gene J. and Betty Tharpe, Edward J. and Sheila O. Rice, Kenneth and Margaret D. Wingert and Ronald L. Hansen appeal the trial court's grant of summary judgment in favor of Defendants–Appellees, Connecticut Mutual Life Insurance Company (CMLI), Boyle Investment Company (BIC) and S.B. Condo Corporation (SBCC). Plaintiffs are comprised of individual condominium owners of Fairway Village Condominiums and their homeowners association. Defendants are separate corporations which, according to the allegations of Plaintiffs' complaint, have participated in the construction, marketing and management of Fairway Village Condominiums.

The relevant facts in this case are largely undisputed. In June, 1972, CMLI acquired the parcel of land upon which the Fairway Village Condominium project is located for the purpose of developing a 98 unit condominium project. CMLI entered into an agreement with Fletcher Properties of Tennessee, Inc. (Fletcher), which required Fletcher to act as an agent for CMLI and to oversee the construction and marketing of the project. Additionally, CMLI entered into an agreement with South Central Development Company (South Central) to act as general contractor for construction of the project. Union Planters National Bank ("Union Planters") acted as construction lender for the project.

Construction of the project was commenced in May of 1974. In 1975, South Central was dismissed from the project because of unsatisfactory performance under its contract with CMLI. CMLI called upon South Central's bonding company, United States Fidelity & Guaranty (USF & G) to secure payment for the delays and deviations necessary to complete the construction project. BIC took over as general manager of the project and SBCC was formed to hold title to the land upon which the condominium was located. Larry Carter Construction Company (Larry Carter) was retained to correct any defective construction of South Central and to complete the project. Larry Carter completed work on the project in 1977.

On September 14, 1976, SBCC sold its first condominium unit to a member of the plaintiff class. Sale of the units continued until 1979. Sometime around 1978, certain plaintiffs began to experience problems with water leaks in their condominium units. Consequently, Plaintiffs hired Raymond Scott, an architect, to investigate the cause of the water problems. On January 24, 1979, Plaintiffs received Scott's report, which revealed *inter alia* defects in the shingling, flashing and siding on Plaintiffs' units. In this report, Plaintiffs' architect opined that repair

work would have to be done in order to stop the leaks.

On February 13, 1979, a meeting was held between representatives of Defendants and representatives of the Plaintiffs. At that meeting, Plaintiffs voiced their concerns about the water leakage problem and the substantial cost of repairs. Plaintiffs allege that during that meeting Defendants assured them that they would make all necessary repairs and would provide Plaintiffs with a "leak free" unit. Defendants attempted to make repairs from 1979 to 1980. On June 6, 1980, Plaintiffs, dissatisfied with the progress of repairs, ordered Defendants' workmen off of the premises.

On April 20, 1983, Plaintiffs filed suit against Defendants specifically alleging breach of express and oral warranties, breach of implied warranties of habitability, quality, merchantability and fitness, negligence, strict liability, negligent misrepresentation, and breach of fiduciary duty. Defendants answered and moved for summary judgment on the basis the suit was not timely filed.[1]

In 1987, after extensive discovery, Plaintiffs' motion to amend their original complaint was granted. In the Amended Complaint, Plaintiffs deleted their claim for breach of implied warranties of habitability, quality, and merchantability, and added a specific count alleging actual fraud.

Defendants then renewed their motion for summary judgment, once again relying upon the three-year statute of limitations set forth in T.C.A. § 28–3–105. In response to Defendants' motions for summary judgment, Plaintiffs moved to amend their amended complaint to allege fraudulent concealment of their cause of action.

At a hearing on Defendants' first motion for summary judgment, Defendants argued that Plaintiffs received notice of the defects in the units, at the very latest, when they received the report of their architect on January 24, 1979. Therefore, Defendants ar-

---

1. T.C.A. § 28–3–105(1) provides in pertinent part:

The following actions shall be commenced within three (3) years from the accruing of the cause of action:

(1) Actions for injuries to personal or real property;

gued that the Plaintiffs were required by T.C.A. § 28–3–105(1) to bring their claim prior to January 24, 1982.

■ Plaintiffs, on the other hand, alleged that Defendants were estopped from raising the statute of limitations as a defense because Defendants had lulled Plaintiffs into inactivity with their representations and actions between February of 1979 to June of 1980. Specifically, the Plaintiffs argued that the Defendants' representations on February 13, 1979, that they would provide Plaintiffs with leak free units in conjunction with Defendants' subsequent attempts to remedy the defects in the Plaintiffs' units caused the Plaintiffs to believe that a lawsuit was unnecessary. Plaintiffs argued, therefore, that they were entitled to a tolling of the statute of limitations between February 13, 1979, the time of the Plaintiffs' first meeting with Defendants, and June 6, 1980, the time that Defendants' workmen were ordered off the property by Plaintiffs.

Moreover, Plaintiffs argued that this 478 day period should be tacked onto the three-year statute limitations and that Plaintiffs should receive a day-for-day credit for the time they were induced into inaction. Therefore, they argued that the statute of limitations period was extended to May 19, 1983.

The trial court granted the Defendants' motion for summary judgment on all counts, excluding fraud, finding that, even if the Plaintiffs had been lulled into inactivity by the Defendants' misrepresentations and acts, the Plaintiffs still had a reasonable time of one and a half years to bring their suit after the lulling activity of the Defendants' had ceased. Consequently, the trial court found that the Plaintiffs' suit was time barred by T.C.A. § 28–3–105(1), and granted Defendants' motion for summary judgment. At a later hearing on Defendants' motion for summary judgment as to the count of fraud, the trial court held that the Defendants' cause of action for fraud was also barred by T.C.A. § 28–3–105(1).

Plaintiffs have appealed the trial court's decision, presenting the following issues for our review:

I. Did the Trial Court err in holding that [Plaintiffs were] not entitled to a day-for-day extension of the original statute of limitations period equal to the number of days in the tolling period?

II. Even assuming, alternatively, that Plaintiffs are only entitled to a reasonable period of time to file suit after Defendants' tolling activity ceased, did the Trial Court err in holding as a matter of law that a year and one-half is a reasonable time to file suit?

III. Did the Trial Court err in holding that fraud and negligent misrepresentation were the same cause of action, and, as such, have the same commencement date for the running of the statute of limitations?

We begin our analysis by noting that a trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn.R.Civ.P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn.App.1992). When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 210–11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted).

The summary judgment process should only be used as a means of concluding a case

when there are no genuine issues of material fact, and the case can be resolved on the legal issues alone. *Id.* at 210 (citing *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988)).

As their first argument, Plaintiffs argue that the trial court erred in determining that T.C.A. § 28–3–105(1) barred Plaintiffs' causes of action against Defendants. Plaintiffs argue that Defendants are estopped from relying upon the statute of limitations. Although they concede that the original statute of limitations would have run on January 23, 1982, Plaintiffs argue that the statute of limitations should be tolled for the 478 day period in which they were lulled into inactivity by the Defendants' representations that they would remedy the units' defects.

It is well-settled in Tennessee law that a party, by its conduct, may be estopped to rely on the statute of limitations. *Sparks v. Metropolitan Government of Nashville and Davidson County*, 771 S.W.2d 430, 433 (Tenn.App.1989).

> [Where by] promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit with the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense.

*Id.* Plaintiffs have pled facts in their complaint which arguably support a finding of estoppel. For purposes of determining whether summary judgment was proper, we are obliged pursuant to *Byrd* to do as the trial court did and treat Plaintiffs' allegations as true and assume for the moment that Plaintiffs were lulled into activity by the Defendants' representations and acts between February 13, 1979, and June 6, 1980.

Taking such allegations as true, we must then determine how long the Plaintiffs had to file their claim after the period of estoppel ended. There is no clear answer under Tennessee law. Under some authorities, a party is allowed a reasonable time in which to file claim after the estoppel ends, and under other authority, the estoppel continues, following the expiration of the statutory period, until the party is allowed a period equal to the statutory period for the commencement of an action. *Duncan v. Gaffney Mfg. Co.*, 214 S.C. 502, 53 S.E.2d 396, 399 (1949); 51 Am.Jur.2d *Limitation of Actions* § 437 (1970).

Plaintiffs urge us to adopt a rule whereby a party lulled into inaction is entitled to a day-for-day tolling of the statute of limitations. Thus, under Plaintiffs' suggested rule, a party, whose cause of action has accrued and who is lulled into inaction by the representations of another party for 45 days, would be entitled to an additional 45 days to bring suit at the end of the original statutory period. Plaintiffs argue that such a rule would be fairer and would be more exact than a rule which required a court to determine whether a party had a reasonable time to bring suit.

Notwithstanding Plaintiffs' arguments, we believe that the better-reasoned rule is the one followed by a majority of jurisdictions, which hold that the effect of such an estoppel is not to stop the running of the statute or to create a new date for its commencement. Instead, under the majority rule, if a reasonable time to file suit within the statutory period exists after the circumstances inducing delay have ceased, a party should not be estopped from pleading the bar of the statute. *Glennan v. Lincoln Inv. Corp.*, 110 F.2d 130 (D.C.Cir.1940); *Property 10–F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290 (D.C. 1970); *Lobrovich v. Georgison*, 144 Cal. App.2d 567, 301 P.2d 460 (1956); 51 Am. Jur.2d *Limitation of Actions* § 437 (1970).

We believe this to be the better-reasoned rule. The main purpose of T.C.A. § 28–3–105 is to bar stale claims. Any equitable estoppel imposed by a court, which prevents a party from raising the statute as a bar, is necessarily in derogation of the statute. We believe that the purpose of the statute is better served by requiring a plaintiff to bring suit within the original statutory period if reasonable time remains in which to bring suit after any lulling activity has ceased.

We believe that this rule is particularly appropriate in the present case where a year and a half remained for Plaintiffs to bring

suit under the original statute of limitations after the lulling activity ceased on June 6, 1980. Given the undisputed material facts of this particular case, we do not believe that reasonable minds could differ as to whether a year and a half was a reasonable time for Plaintiffs to bring suit against Defendants. Therefore, we hold that the trial court properly granted Defendants' motions for summary judgment. Consequently, Plaintiffs first and second issues are without merit.

■ As their final issue, Plaintiffs argue that they were entitled to bring a new cause of action for fraud, accruing in 1985, against the Defendants. They allege that Defendants had knowledge of the defects in units when they represented them to be of good quality during their sale from 1976 to 1979, and they further allege that Defendants fraudulently concealed this intentional misrepresentation from Plaintiffs until 1985. Plaintiffs argue, consequently, that the statute of limitations should have begun to accrue in 1985 for their cause of action for fraud.

Plaintiffs' argument is based solely on their claim that, during discovery in 1985, they found evidence that the Defendants acted intentionally in misrepresenting the quality of the condominium units to Plaintiffs. Specifically, Plaintiffs discovered a 1977 newspaper article which represented the units to be of "good quality, beautiful and of increasing value," and they discovered a 1975 lawsuit brought by South Central against CMLI and Union Planters for breach of contract (the South Central lawsuit). Plaintiffs allege that during the course of the South Central lawsuit CMLI and UPNB both admitted the existence of certain defects in the units.

Plaintiffs argue that this information found during discovery supports their claim that Defendants committed fraud and intentionally misrepresented the quality of the units during sale of the apartments. Furthermore, they argue that the Defendants fraudulently concealed their fraud from Plaintiffs until 1985. Consequently, they argue that the statute of limitations of their cause of action for fraud should have been tolled until the time that they discovered the fraud in 1985.

■ We are not persuaded by Plaintiffs' argument. While Plaintiff did not specifically allege "fraud" or "intentional misrepresentation" in their original complaint, the complaint contained general allegations of intentional and knowing misrepresentation on the part of Defendants, concerning the quality of the units. Our cases point to the fact that fraud can be an intentional misrepresentation of a known, material fact or can be the concealment or nondisclosure of a known fact when there is a duty to disclose. *Hill v. John Banks Buick, Inc.,* 875 S.W.2d 667 (Tenn.App.1993); *Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat'l Ass'n,* 835 S.W.2d 25 (Tenn.App.1992); *Stacks v. Saunders,* 812 S.W.2d 587 (Tenn. App.1990). As such, intentional misrepresentation is an element of fraud, although the two are often used interchangeably in common parlance. *See Ritter v. Custom Chemicides, Inc.,* 912 S.W.2d 128 (Tenn. 1995).

In their original complaint, Plaintiffs alleged that "the Defendants' actions of intentionally or negligently concealing the defects described herein as well as the deceitful and negligent misrepresentations made by the Defendants and/or their agents to the Plaintiffs and their predecessors in interest in the marketing of this Development were made in such a willful, gross, reckless and negligent manner that the Plaintiffs are entitled to punitive damages." In our opinion, these allegations smack of fraud. Consequently, we do not believe that Plaintiffs can reasonably allege to have been first put on notice of Defendants' fraud in 1985 when they alleged conduct on the part of Defendants amounting to fraud in their 1982 complaint. We do not think that the discovery of evidence, which merely supports Plaintiffs' initial allegations, are enough to warrant a new cause of action for fraud. To make such a finding would effectively allow these Plaintiffs to sidestep

the applicable statute of limitations without reasonable justification. As such, we find that the Plaintiffs' cause of action for fraud is barred.

The judgment of the trial court is affirmed and this cause is remanded for any further necessary proceedings. Costs on appeal are taxed to Appellants, for which execution may issue if necessary.

HIGHERS, and LILLARD, JJ. concur.