IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2003 Session

## BRICK CHURCH TRANSMISSION, INC. v. SOUTHERN PILOT INSURANCE CO.

**Appeal from the Chancery Court for Davidson County**
**No. 02-1734-II, Carol L. McCoy, Chancellor**

—————————————

**No. M2002-02778-COA-R3-CV - Filed November 25, 2003**

—————————————

Insured, Plaintiff/Appellant, filed suit under a policy of commercial insurance alleging a loss by theft that was covered by the policy. Defendant/Appellee filed a Tennessee Rule of Civil Procedure 12.02(6) Motion to Dismiss based upon expiration of the two year period in which suit could be brought under the terms of the policy. The trial court granted the motion to dismiss, and we affirm the action of the chancellor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and , JAMES L. WEATHERFORD, SR. J.,joined.

Keith Jordan and Theodora Pappas, Nashville, Tennessee, for the appellant, Brick Church Transmission, Inc.

Alan Mark Sowell and M. Kristen Selph, Nashville, Tennessee, for the appellee, Southern Pilot Insurance Co.

### OPINION

Plaintiff, Brick Church Transmission, Inc., operated a transmission repair business at 1206A Brick Church Pike in Nashville, Tennessee. Defendant, Southern Pilot Insurance Company, a subsidiary of Southern Guaranty Insurance Company, issued its policy number 00CPP47098 to Brick Church Transmission, Inc., same being a commercial property policy insuring the business against certain losses. During the evening hours of December 12, 1999, Plaintiff alleged that it's business establishment at 1206A Brick Church Pike was burglarized causing a theft loss that was insured under the policy.

Plaintiff filed timely notice of its loss with Defendant and, on March 20, 2000, received a letter from Defendant advising:

This is to advise you that the circumstances of this loss are still under active investigation.

We shall continue to make every effort to conclude our investigation and to take final action on your claim as soon as possible.

The purpose of this letter is to advise you that we are undertaking the continued investigation with a full and complete reservation of all rights afforded us under the policy of insurance issued to Brick Church Transmission by this company.

On April 4, 2000, Plaintiff, acting through its principle owner, Hozell Anderson, filed its sworn proof of loss with Defendant.

On June 27, 2000, Anderson received a letter from counsel for Defendant requesting that he submit to an oral examination pursuant to terms of the policy and requesting that he bring with him for examination the following documents:

1.   Detailed personal and business federal income tax returns from 1991 through 1999.

2.   Copies of all year end financial statements including, but not limited to, the accountant's/CPA's report, balance sheets, income statements, cash flow statements, supplemental information and schedules, and footnotes from 1991 through 1999.

3.   Monthly income statements from 1991 through present.

4.   Monthly and quarterly balance sheets from 1991 through present.

5.   Copy of detailed depreciation/fixed asset schedules from 1991 through present.

6.   Physical inventories from 1991 through present.

7.   Detailed information on any loans or notes payable from 1991 through present including:

|   |   |
|---|---|
| - amount borrowed | - payment history |
| - monthly payment | - security agreement |
| - maturity date | - loan application |

- interest rate - creditor

8. Copies of bank statements and canceled checks for all accounts from 1991 through present.

9. A copy of the cash receipt journal, sales journal, accounts receivable journal and/or any books and records in which receipts and/or sales are recorded from 1991 through present.

10. Sales invoices from 1991 through present.

11. A copy of the cash disbursement journal, accounts payable journal and/or any books and records in which purchases and/or expenses are recorded from 1991 through present.

12. Purchase and subcontractor invoices for 1991 through present.

13. Copies of any books, ledgers, journals and/or any other records where inventory detail and/or balances are recorded from 1991 through present.

14. Copies of the general ledger and/or any other summary journals/ledgers from 1991 through present.

15. Copies of the working trial balances for the years ending from 1991 through present.

16. A copy of year end adjusting entries from 1991 through present.

17. Year end accruals for the years ended from 1991 through present.

18. Payroll journal from 1991 through present.

19. Quarterly payroll tax returns - form 941 - from 1991 through current.

20. State withholding and unemployment returns from 1991 through present.

21. Monthly sales tax returns since the inception of the business.

22. Copies of all documentation supporting cash paid outs from 1991 through present.

23. A copy of all equipment and building leases.

24.      List of all suppliers and the credit terms.

25.      Copies of all the documents in your accountant's/CPA's file and/or his possession from 1991 through present.

On June 11, 2002, Plaintiff filed suit to recover under the policy. Defendant filed its Tennessee Rule of Civil Procedure 12.02(6) Motion to Dismiss on August 7, 2002, exhibiting to the Motion a certified copy of policy number 00CPP47098 and relying upon the provision of the policy providing:

**B.      LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1.      There has been full compliance with all the terms of the Coverage Part; and

2.      The action is brought within 2 years after you first have knowledge of the "loss."

On September 30, 2002, Plaintiff filed its Response to Defendant's Motion to Dismiss, filing therewith the Affidavit of Hozell Anderson, providing:

1.      My name is Hozell Anderson, and I am the principal owner and operator of a business known as Brick Church Transmission, Inc.

2.      On December 12, 1999, that business was broken into, and certain trade tools were taken from the premises.

3.      I reported the loss to the Metropolitan Police Department and to representatives of Southern Guaranty Insurance Company, with whom I had secured theft loss insurance.

4.      After initial discussions with an adjustor, Bonnie Yow, I submitted a Proof of Loss on April 4, 2000. On June 27, 2000, I was mailed a letter from Mr. Alan Sowell, an attorney in Nashville, which requested the submission to him of comprehensive business records, the bulk of which were not immediately available to me.

5.      Despite my best efforts, I had not been able to secure all the information required, and in the summer of 2001, I first sought legal representation on the claim.

6.      My counsel was in the process of compiling the requested documents when the second anniversary of the break-in and theft loss occurred.

7.      During this entire period, I made good faith endeavors to cooperate with Southern Guaranty Insurance Company in meeting its demands.

8.      Further affiant sayeth not.

The case was heard on October 4, 2002 on Defendant's Motion to Dismiss and Plaintiff's Response thereto resulting in an Order of October 14, 2002, providing:

> This cause came on to be heard on the 4th day of October, 2002, before the Honorable Carol McCoy, Chancellor for Part II of the Chancery Court for Davidson County, Tennessee, upon the Defendant's Motion to Dismiss. After statement of counsel and, in consideration of the entire record, the Court was of the opinion that the Plaintiff failed to file suit against the Defendant within two (2) years of the date of the loss as required by the policy, and therefore, granted the Defendant's Motion to Dismiss.
>
> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that this cause is hereby dismissed. The Court Costs are taxed against the Plaintiff for which let execution issue if necessary.

The case is before this Court on the technical record alone, *see* Tennessee Rule of Appellate Procedure 24(a), there being no stenographic record and no statement of the evidence pursuant to Appellate Rule 24(c). Nothing else appears in the technical record save the documents discussed above.

A Rule 12.02(6) motion to dismiss is not inhibited in the same measure as a demurrer at common law. A demurrer could not "speak," meaning that it could not introduce into the record a new fact not disclosed by the face of the complaint. *Gore v. Tenn. Dep't. of Corr.*, No. M2002-02640-COA-R3-CV, 2003 WL 22289944 (Tenn.Ct.App.Oct. 6, 2003). A Rule 12.02(6) motion can "speak," but when it does so, it is converted into a Rule 56 motion for summary judgment by the express terms of Rule 12.02, which provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The policy of insurance, not having been exhibited to the Complaint itself, did not become a part of the Complaint pursuant to Rule 10.03. The Rule 12.02(6) Motion cannot "speak" by exhibiting the policy of insurance that is extraneous to the Complaint without effecting a conversion of the Rule 12.02(6) Motion into a motion for summary judgment, wherein all parties "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Thus, the door is opened for consideration of the Anderson Affidavit in response to what is now Defendant's Rule 56 Motion for Summary Judgment.

While the controlling question on appeal is still a question of law, it is now a Rule 56 question rather than a Rule 12.02(6) question. The Rule 12.02(6) question is whether or not the complaint, without any consideration of extraneous materials, fails to "state a claim upon which relief can be granted." Tenn. R. Civ. P. 12.02(6); *see also League Cent. Credit Union v. Mottern*, 660 S.W.2d 787 (Tenn.Ct.App.1983). A Rule 56 motion, however, addresses not the allegations of the complaint, but the merits of the litigation. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978). The question here is not whether the allegations of the complaint are sufficient to state a cause of action but "what material facts are actually and in good faith controverted." Tenn. R. Civ. P. 56.05.

Since the policy of insurance in issue first appeared in the case as an exhibit to the Motion to Dismiss filed August 7, 2002, the provisions of Rule 12.02 converted the Motion at that time to a Motion for Summary Judgment under Rule 56. The nonmoving party is, thus, entitled to the benefit of "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Tenn. R. Civ. P. 12.02. The hearing on the Motion was timely held, since more than thirty days had elapsed between the August 7, 2002 filing of the Motion to Dismiss and the October 4, 2002 hearing thereon. Tenn. R. Civ. P. 56.04. The nonmoving party is, further, entitled to submit affidavits in opposition to the Motion and to make further discovery if such is necessary. *See* Tenn. R. Civ. P. 56.06; *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993). In this case, there is no statement of undisputed facts filed pursuant to Rule 56.03.

The failure to comply with the specifics of Rule 56 are rendered harmless if the record before the court clearly shows that the nonmoving party cannot remedy a defect fatal to his cause of action. *Craven v. Lawson*, 534 S.W.2d 653 (Tenn.1976). In this case, the nonmoving party did not seek to take additional discovery after filing the September 30, 2002 Affidavit of Hozell Anderson, and this Affidavit itself is fatal to Plaintiff's case under *Certain Underwriter's at Lloyd's of London v. Transcarriers, Inc.*, 107 S.W.3d 496 (Tenn.Ct.App.2002), unless Plaintiff can find some way around that case.

Tennessee has long held that an insurance policy provision establishing an agreed limitations period within which suit may be filed against the company is valid and enforceable. *Guthrie v. Conn. Indem. Ass'n*, 49 S.W. 829, 830 (Tenn. 1898); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn.Ct.App.1938). By way of modification to a policy provision that provides for the limitation to begin with the actual loss, the supreme court has held that where such policy also contains a provision for a settlement period after the loss during which the insured is prohibited from bringing suit under the policy, the commencement of the limitation period is extended until the expiration of the settlement immunity period. *Boston Marine Ins. Co. v. Scales*, 49 S.W. 743, 747 (Tenn.1898). If the insurance company affirmatively denies the insured's claim before the expiration of the settlement of loss immunity period, the contractual limitation of actions provision commences to run upon the date of such denial. *See Certain Underwriter's*, 107 S.W.3d at 502.

The factual situation in this case closely parallels *Certain Underwriter's*. In that case, the insured suffered two losses on May 3, 1998 and June 1, 1998, respectively. Timely proof of loss was

-6-

filed, but the claim was neither accepted nor denied during the twelve month contractual limitation period. In November of 1999, *Certain Underwriter's* filed a declaratory judgment action seeking a declaration of whether or not it was required to provide coverage for the claims. In June of 2000, *Transcarriers* filed its counter-complaint alleging breach of contract and seeking recovery. This counter-complaint was met by a motion for summary judgment by the insurer asserting that the suit was time barred under the twelve months limitation period. The "settlement of loss" provision of the *Certain Underwriter's* policy provided:

> 17. SETTLEMENT OF LOSS. All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

*Certain Underwriter's*, 107 S.W.3d at 498.


Under this "settlement of loss" provision, *Certain Underwriters* had a period of sixty days from and after the filing of the proof of loss within which either to pay or deny the claim. If it denied the claim, the limitations period of the policy would begin to run upon denial. As in the case at bar, however, the insurance company neither paid nor denied responsibility for the loss. The court held that the limitations period in the policy commenced to run at the end of the sixty day settlement of loss period.

> In holding that a cause of action accrues upon denial, the courts did not alter the contractual limitations period or rewrite the contract so that denial is required before an insured may bring an action against the insurer. To require denial of a claim before a cause [of] action could accrue would permit the insurer to merely sit on a claim and do nothing. Rather, such cases have recognized that it is inequitable for the insurer to effectively shorten the period in which a cause of action could be maintained by granting itself a period in which it is immune from suit while the limitations period is slipping away. *Boston Marine*, 49 S.W. at 747. The immunity period therefore postpones the accrual of the insured's action. *Hill*, 125 S.W.2d at 192. Once the action has accrued, the limitations period begins to run. If an insurer neither pays nor denies a claim brought by its insured, a suit against the insurer may be sustained upon expiration of the settlement of loss/immunity period. *Id*. Accordingly, the contractual statute of limitations begins to run upon denial of liability or upon expiration of the immunity period, whichever comes first.
>
> . . . .
>
> The contractual limitations period in a contract of insurance begins to run when the insured's cause of action accrues. Notwithstanding language in the policy that the cause of action must be brought within so many months of occurrence of the

loss, a settlement of loss period which gives the insurance carrier so many days in which to settle the claim, thereby rendering the insurer immune from suit, postpones accrual of the insured's action until the expiration of the settlement of loss period. Denial of the claim by the insurer results in a waiver of the settlement of loss period, and thus the insured's cause of action accrues upon denial. When the insurer neither pays nor denies a claim within the settlement of loss period, it is no longer immune from suit and the insured's cause of action accrues. Thus the limitations period is triggered either by denial of the claim by the insurer or by expiration of the settlement of loss period, whichever comes first.

*Certain Underwriter's*, 107 S.W.3d at 499-500, 502.

The corresponding provision relative to "loss payment" in the Southern Pilot Policy provides: "We will give notice of our intentions within 30 days after we receive the sworn proof of loss." The sworn proof of loss was filed on April 4, 2000, and, as in *Certain Underwriter's*, Southern Pilot neither paid the loss nor denied liability under the policy within the thirty day "loss payment" period. The policy limitation period commenced to run on May 4, 2000 and had expired prior to the filing of the suit on June 11, 2002.

Plaintiff seeks to escape the effect of *Certain Underwriters* by expanding the scope of *Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn.1998) (dealing with insured's failure to comply with the notice provisions of a U. M. policy) to make that case apply to the limitation of action provisions of this policy. *Alcazar* was a suit by a passenger riding in the trunk of an automobile for injuries sustained in an accident and a claim under the provisions of an uninsured motorist section of a policy of insurance. In that case, notice of the accident was not provided to the insurance company until approximately one year after the accident.

Prior to *Alcazar*, Tennessee had consistently followed the traditional common law approach that notice was a condition precedent to recovery under the policy and that no showing of prejudice was necessary. Quoting from *Appleman on Insurance*, § 4.30 (2nd Ed.1996), the supreme court stated the rationale for such rule as follows:

The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at the trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. If the insurer is given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.

*Alcazar*, 982 S.W.2d at 849.

After tracing in great detail the trend away from the common law rule and toward a rule recognizing that the insurance policy is a contract of adhesion drafted by the insurer, the *Alcazar* court overruled prior Tennessee cases and adopted a standard involving two questions:

1.    "Did the insured provide timely notice in accordance with the contract?" *Id.* at 856.

2.    "If not, did the insured carry its burden of proving that the insurer was not prejudiced by the delay?" *Id.*

The *Alcazar* court specifically overruled *Hartford Accident Indemnity Co. v. Creasy*, 530 S.W.2d 778 (Tenn.1975), and *Phoenix Cotton Oil Co. v. Royal Indemnity Co.*, 205 S.W. 128 (Tenn.1918), applying a general principle pronounced by this Court fifty years earlier.

> It is a general principle, pervading the law of all forms of insurance, that policies shall be liberally construed in favor of the insured. This because courts do not shut their eyes to realities; they know that the policy is a contract of "adhesion," i.e. not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance.

*Brandt v. Mut. Benefit Health & Accident Ass'n*, 202 S.W.2d 827, 831 (Tenn.Ct.App.1947).

Attempting to apply *Alcazar* to a contractual limitation of actions provision in a policy would present the same near insurmountable obstacle as would be presented in trying to apply it to a statutory limitation of actions provision. The first *Alcazar* question would be whether or not the insured filed his action within the contractual limitation period. In this case, the answer is "no." The next question would be whether or not the insured could carry its burden of proving that the insurer was not prejudiced by the failure to timely file the action. This would seem to be an impossible burden for the plaintiff to carry since a statute of limitations "confers a positive right" on the defendant. *C.A. Hobbs, Jr., Inc. v. Brainard*, 919 S.W.2d 337, 339 (Tenn.Ct.App.1995).

Reported case law is sparse addressing the issue of prejudice in a statute of limitations or a policy limitation analysis. The Common Wealth Court of Pennsylvania observed:

> The first argument which Appellants make is that since March of 1995, Philadelphia has prepared its case as if the federal claims were part of this suit and therefore, Philadelphia suffers no prejudice from reinstating the federal claims. In response, Philadelphia notes that it was only prudent for it to prepare to meet the federal claims because it could not be absolutely certain given the vagaries of the law, that the trial court would rule that the federal claims were time barred.

Appellants' argument regarding prejudice to Philadelphia is a red herring. Prejudice is simply not part of the analysis to determine whether a claim is time barred by the statute of limitations or not. Either the time limitation has run or it has not run. If it has run, a suit cannot be initiated even if there is no prejudice demonstrated. *See, e.g., Wilkes-Barre General Hospital v. Lesho*, 62 Pa.Cmwlth. 222, 435 A.2d 1340, 1343 (1981)("prejudice is not a consideration in most cases where the bar of the statute of limitations may apply. . . .").

*Vetenshtein v. City of Philadelphia*, 755 A.2d 62, 66 (Pa.Cmmw.Ct.2000), *appeal denied*, 764 A.2d 1071 (Pa. Nov.27,2000).

The Supreme Court of Minnesota faced the issue of prejudice relative to the limitation of action provision in a policy of insurance in *L & H Transport, Inc. v. The Drew Agency, Inc.*, 403 N.W.2d 223 (Minn.1987). In that case, the supreme court first affirmed a court of appeals' finding that the limitation clause barred a suit under the policy only if the insurer could show prejudice. On rehearing, the supreme court reversed itself and made clear the distinction between notice provisions in a policy and limitation of actions provision.

In *L & H Transport, Inc. v. Drew Agency, Inc.*, 369 N.W.2d 608 (Minn.App.1986), the Court of Appeals held that the failure of an insured to bring suit against its insurer within the period provided for by a suit limitation clause in the policy barred a suit to recover under the policy only if the insurer could show prejudice. By order we affirmed that decision. *L & H Transport, Inc. v. Drew Agency, Inc.*, 384 N.W.2d 435 (Minn.1986). We granted appellant Chubb and Sons' petition for rehearing for the purpose of reviewing that order. We conclude that our order was incorrect and we withdraw it. The decision of the Court of Appeals is reversed in part and affirmed in part.

. . . .

The L & H-Chubb insurance policy contained a suit limitation clause which provided that "[n]o suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim * * *." In this case, the accident giving rise to L & H's claim occurred and was discovered by L & H on July 22, 1982; however, L & H did not commence suit against Chubb until July 12, 1984.

The Court of Appeals holding that because Chubb was not prejudiced by L & H's failure to bring suit within the limitation period, L & H could still bring suit against Chubb rested on that court's earlier decision in *Loram Maintenance of Way, Inc. v. Consolidated Rail Corp.*, 354 N.W.2d 111 (Minn.App.1984), *pet. for review denied* (Minn. January 11, 1985). In *Loram*, the Court of Appeals, addressing the

issue of whether a suit limitation clause in the insurer's policy barred a suit by the insured, held that suit was barred only if the insurer could show prejudice. *Id*. at 114.

Although we declined to review the *Loram* decision, in *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645 (Minn.1986), we addressed the same issue–whether a suit limitation clause in the insurer's policy barred a suit by the insured. We held that prejudice to the insurer was not a proper consideration; rather, the rule is that a suit limitation clause will bar an untimely suit if the clause does not conflict with a specific statute and if the limitation period provided for is not unreasonable in length. *Henning*, 383 N.W.2d at 650-51.

Understandably, the Court of Appeals decision in *Henning, Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 361 N.W.2d 446 (Minn.App.1985), relied upon *Loram* for its holding that the insurer must show prejudice before a suit limitation clause will work to bar a suit. In our decision in *Henning*, we spoke to the Court of Appeals reliance on *Loram*. We held it to be incorrect on the ground that in *Loram* the Court of Appeals "was considering the effect of the injured party's failure to file a *notice* of loss with the insurance company within the limitation period prescribed by contract." *Henning*, 383 N.W.2d at 650, n. 6 (emphasis in original).

We find that we incorrectly distinguished the *Loram* case in our decision in *Henning*. *Loram* and *Henning* addressed the same issue–whether a suit limitation clause in an insurance policy will bar a suit by the insured commenced outside of the limitation period. To the extent *Loram* is inconsistent with our decision in *Henning*, *Loram* is wrongly decided.

The *Loram* holding resulted from a confusion of notice limitation clauses with suit limitation clauses. The rules in Minnesota are that when an insurance clause requires *notice* of a claim to be given within a certain period, failure to give *notice* within that period absolves the insurer of liability only if the failure prejudices the insurer. *Reliance Ins. Co. v. St. Paul Ins. Co.*, 307 Minn. 338, 239 N.W.2d 922 (1976). When an insurance clause requires *suit* to be brought within a certain period, failure to bring *suit* within that period bars suit if the limitation clause does not conflict with a specific statute and is not unreasonable in length. *Henning*, 383 N.W.2d 645 (Minn.1986).

The Court of Appeals decided this case based on *Loram* and since *Henning* controls, we withdraw our original order, *L & H Transport*, 384 N.W.2d 435 (Minn.1986), and reverse that portion of the Court of Appeals decision inconsistent with *Henning*.

*L & H Transport*, 403 N.W.2d at 224, 225-26.

In *Hospital Support Services v. Kemper Group*, 889 F.2d 1311 (3rd Cir.1989), the court addressed Pennsylvania law on this subject in a diversity jurisdiction case. Noting that the Supreme Court of Pennsylvania in *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193 (1977), had invoked a prejudice element into the equation involving a policy notice provision and that the case had led to a variety of opinions, both in the courts of Pennsylvania and in federal courts sitting in Pennsylvania on diversity jurisdiction cases, as to the question of extending the prejudice requirement to policy limitation of action clauses, the court held that such extension was improper.

> Thus, the only member of this Court to consider the issue has expressed the view that *Brakeman's* second theoretical basis–that the purpose of the notice of loss clause is to prevent prejudice to the insurer–cannot justify application of the prejudice rule to limitation of suit clauses.
>
> We agree and believe the better view is that the *Brakeman* rule does not apply to limitation of suit clauses. Neither of the purported justifications for *Brakeman's* departure from a strict contractual approach apply to suit limitations clauses. We recognize that "[s]uch clauses were completely acceptable and enforceable at common law without any demonstration of prejudice." *Hamilton Bank v. Export-Import Bank of U.S.*, 634 F.Supp. 195 (E.D.Pa.1986). Under the sweeping language of *Brakeman*, many clauses arguably could be held to be unenforceable absent a showing of prejudice. We, therefore, hesitate to hold that limitation of suit clauses can be enforced only in the absence of prejudice to the carrier. Further, as we find the purposes of the notice and suit limitations clauses differ, the theoretical justifications for requiring prejudice in the notice clauses at issue in *Brakeman* are not apt with respect to limitations of suit clauses. *See Brandywine*, 405 F.Supp. at 151.

*Hosp. Support Servs.*, 889 F.2d at 1316.

Applying Delaware law, the Federal District Court in *Brandywine 100 Corp. v. Hartford Fire Ins. Co.*, 405 F.Supp. 147 (Del.1975), refused to extend the prejudice element of a failure to give notice so as to also effect a prejudice requirement before enforcement of a limitation of action provision of the policy. Said the court: "The purpose of the former is to avoid prejudice; the latter is simply a contractual modification of the statute of limitation." *Brandywine*, 405 F.Supp. at 151.

If *Alcazar* is to be expanded to introduce a "prejudice" analysis into limitation of actions provisions, statutory or contractual, such expansion must come from the Supreme Court of Tennessee or from the General Assembly.[1]

---

[1] It should be noted that Tennessee courts have twice declined to extend the *Alcazar* rational. *See Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195 (Tenn.2000) (dealing with a statute); *Pope v. Lenty & Health, PLLC*, 87 S.W.3d 89 (Tenn.Ct.App.2002) (distinguishing between occurrence policies and claims-made policies).

Plaintiff/Appellant next asserts that the policy provision relative to "full compliance" with the terms of the policy is ambiguous and puts the insured in an impossible position. First the insured must comply with the extensive document production demand contained in the insurer's letter of June 27, 2000. Then his action must be brought within two years after the expiration of the settlement immunity period. In his brief Plaintiff asserts:

> In drafting this proviso, the Insurer/Appellee clearly created two separate conditions which an insured must comply with before being eligible to file suit against his insurer under the terms of the contract.
> The importance of the "full compliance" phrase in the policy is that if an insured was attempting to comply with the demands of the insurer but was unable to, an insured would be in a quandry as to how to get relief - - either keep trying to comply with the insurer's demands [which might put one over the two year period] or sue the insurer while not being in full compliance. However, if the insured sues while not being in "full compliance," it is a forgone conclusion that the Insurer will file a Motion to Dismiss on the ground that the Insured filed suit against the insurer without being in full compliance - - as is mandated by the policy terms. Either way, according to the insurance policy, an insured would lose.

The difficulty with this position is that it assumes an incompatibility between the "full compliance" provision of the policy and the limitation of action provision. The "full compliance" provision of the policy does not provide an extension to the settlement immunity period. Nor is it the prerogative of the insurer to decide the question of whether or not the insured is in full compliance.[2]

Finally, Plaintiff asserts that the insurer should be estopped to rely on the limitation of action provision of the policy. The record before the Court establishes no basis for estoppel. The record shows no action at all by either party between the June 27, 2000 letter by the insurer demanding production of documents and the expiration of the limitation of action period on May 4, 2002. The discussion by this Court in *Fairway Village Condominium Association, Inc. v. Connecticut Mutual Life Insurance Co.*, 934 S.W.2d 342 (Tenn.Ct.App.1996) is enlightening.

> It is well-settled in Tennessee law that a party, by its conduct, may be estopped to rely on the statute of limitations. *Sparks v. Metropolitan Government of Nashville and Davidson County*, 771 S.W.2d 430, 433 (Tenn.App.1989).
>
> > [Where by] promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit [within] [sic] the applicable statute of

---

[2] A trial court might well require the insurer to justify the expansive scope of the June 27, 2000 letter relating to production of documents.

> limitations, the party making the representations may be estopped to
> raise the statute of limitations as a defense.

*Id.* Plaintiffs have pled facts in their complaint which arguably support a finding of estoppel. For purposes of determining whether summary judgment was proper, we are obliged pursuant to *Byrd* to do as the trial court did and treat Plaintiffs' allegations as true and assume for the moment that Plaintiffs were lulled into [in]activity [sic] by the Defendants' representations and acts between February 13, 1979, and June 6, 1980.

> Taking such allegations as true, we must then determine how long the Plaintiffs had to file their claim after the period of estoppel ended. There is no clear answer under Tennessee law. Under some authorities, a party is allowed a reasonable time in which to file claim after the estoppel ends, and under other authority, the estoppel continues, following the expiration of the statutory period, until the party is allowed a period equal to the statutory period for the commencement of an action. *Duncan v. Gaffney Mfg. Co.*, 214 S.C. 502, 53 S.E.2d 396, 399 (1949); 51 Am.Jur.2d *Limitation of Actions* § 437 (1970).

> Plaintiffs urge us to adopt a rule whereby a party lulled into inaction is entitled to a day-for-day tolling of the statute of limitations. Thus, under Plaintiffs' suggested rule, a party, whose cause of action has accrued and who is lulled into inaction by the representations of another party for 45 days, would be entitled to an additional 45 days to bring suit at the end of the original statutory period. Plaintiffs argue that such a rule would be fairer and would be more exact than a rule which required a court to determine whether a party had a reasonable time to bring suit.

> Notwithstanding Plaintiffs' arguments, we believe that the better-reasoned rule is the one followed by a majority of jurisdictions, which hold that the effect of such an estoppel is not to stop the running of the statute or to create a new date for its commencement. Instead, under the majority rule, if a reasonable time to file suit within the statutory period exists after the circumstances inducing delay have ceased, a party should not be estopped from pleading the bar of the statute. *Glennan v. Lincoln Inv. Corp.*, 110 F.2d 130 (D.C.Cir.1940); *Property 10-F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290 (D.C.1970); *Lobrovich v. Georgison*, 144 Cal.App.2d 567, 301 P.2d 460 (1956); 51 Am.Jur.2d *Limitation of Actions* § 437 (1970).

*Fairway Village Condo*, 934 S.W.2d at 346.

The record shows no action by Southern Pilot Insurance Company designed to lull the insured to sleep and, indeed, no action of any kind by the insurance company after the letter of June 27, 2000. More than 22 months elapsed between the June 27, 2000 letter and the expiration of the limitation period provided by the policy. The record does not support the assertions of estoppel.

The judgment of the trial court is in all respects affirmed, and costs are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE